## 50030. BROWN v. GEORGIA STATE BOARD OF VETERINARY MEDICINE.

QUILLIAN, Judge.

This is an appeal from the judgment and order of the superior court which affirmed the final order of the Board of Veterinary Medicine of the State of Georgia, which concludes that appellant had a professional association with or employed a person practicing veterinary medicine unlawfully as proscribed by Code Ann. § 84-1509 (7) (Ga. L. 1965, pp. 92, 100; 1973, pp. 260, 263; 1974, pp. 1441, 1443), and imposes a one-year suspension of appellant's license to practice veterinary medicine.

The final order of the Board of Veterinary Medicine stated in part: "The Board of Veterinary Medicine of the State of Georgia, all members being present, having heard and considered the evidence offered in this matter on September 26, 1973, now makes the following findings of fact.

"1. The respondent is licensed to practice veterinary medicine in the State of Georgia. Respondent's wife, Mrs. P. J. Brown, is not so licensed.

"2. On or about February 28, 1973, Mrs. Linda Carroll called the respondent's home in Newnan, Georgia, for the purpose of making an appointment with respondent in order to obtain certain medications, commonly referred to as 'puppy shots,' for Mrs. Carroll's bassett hound. Mrs. Carroll did not speak with respondent. At the time arranged for the appointment, respondent's wife opened the offices of respondent, examined Mrs. Carroll's bassett hound, and administered to it medication, by injection, commonly referred to as 'puppy shots.' For these services Mrs. Brown exacted the sum of $13.00. Respondent was not present on the premises of Sunleaf Clinic at that time, had not examined the animal, discussed any aspect of the animal's health with Mrs. Carroll, or specifically directed the administration of these medications to this animal. Respondent does not recall this specific incident but the particular transaction described was within the scope of responsibilities generally delegated by him to his wife with respect to the practice of veterinary medicine under

the name Sunleaf Clinic. Under that standing delegation, respondent authorized his wife, while not in his presence and not under his specific direction, to examine animals and to administer what he describes as "routine medications," and for such services to exact a fee.

"3. On or about March 13, 1973, respondent's wife, Mrs. P. J. Brown, at the respondent's Sunleaf Clinic, administered to the bassett hound owned by Mrs. Linda Carroll, medication, by injection, commonly referred to as a 'worm shot.' Respondent was not on the premises of Sunleaf Clinic at that time, had not examined the animal, discussed any aspect of the animal's health with Mrs. Carroll, or specifically directed the administration of this medication to this animal. Respondent does not recall this specific incident but the particular transaction described was within the scope of responsibilities generally delegated by him to his wife with respect to the practice of veterinary medicine under the name Sunleaf Clinic. Under that standing delegation, respondent authorized his wife, while not in his presence and not under his specific direction, to examine animals and to administer what he describes as 'routine medications' and for such services to exact a fee.

"4. The Board makes no finding and expresses no opinion on any other issues of fact raised at the hearing, but on the basis of the above findings of fact and reasonable inferences drawn therefrom, reaches the following conclusions of law.

"1. Georgia Code § 84-1509 provides, in pertinent part, as follows: 'Upon written complaint sworn to by any person, the board may, after a fair hearing and by a concurrence of four members, . . . suspend for a certain time the license of . . . any licensed veterinarian for any of the following reasons: . . . 7. Having professional association with or employing any person practicing veterinary medicine unlawfully.' Georgia Code § 84-1503 (a) provides as follows: 'No person may practice veterinary medicine in this state who is not a licensed veterinarian.' Georgia Code § 84-1503 (b) contains exceptions to this prohibition, none of which are relevant here. Georgia Code § 84-1502.3 provides, in pertinent part, as follows: ' "Practice of veterinary medicine" means:

(a) to diagnose, treat, correct, change, relieve, or prevent animal disease, deformity, defect, injury, or other physical or mental conditions, including the prescription or administration of any drug, medicine . . . or other therapeutic or diagnostic substance. . . (b) To represent, directly or indirectly, publicly or privately, an ability and willingness to do any act described in Subsection (a). (c) To use any title, words, abbreviations or letters in a manner or under circumstances which induce the belief that the person using them is qualified to do any act described in Subsection (a), except where such person is a veterinarian.'

"Respondent argues that Code § 84-1502.3 requires that all elements set forth in subparagraphs (a), (b) and (c) thereof must concur in order for any act to constitute the practice of veterinary medicine. Under respondent's construction, the performing of veterinary surgery is not the practice of veterinary medicine unless concurrently the person performing such surgery (1) represents an ability and willingness to do so and (2) uses any title, words, abbreviations or letters so as to induce the belief that the person using them is qualified to perform that surgery or any other act listed in subparagraph (a) of § 84-1502.3. Respondent thus argues that no violation of Code § 84-1509.7 was alleged or proven because there was respectively no charge or proof that Mrs. P. J. Brown employed a title, words, abbreviation or letters. While respondent also argues that it was not alleged or proven that Mrs. Brown represented her ability or willingness to do the act charged, proof of the act necessarily proves, at least prima facie, a representation of ability and willingness to do the act.

"The Board rejects the respondent's argument.

"The definition in Code § 84-1502.3 contains three separate and distinct definitions of what constitutes the practice of veterinary medicine. The language, grammatical structure, and substantive content of Code § 84-1502.3 in the Board's view requires the conclusion that it constitutes the practice of veterinary medicine to do any act described in subparagraph (a), or to represent an ability and willingness to do any act described in subparagraph (b), or to use any title which induces a belief

that the person using it is qualified to do any act described in subparagraph (a). Otherwise, the provisions of Code §§ 84-1502.3 (b) and 84-1502.3 (c) are surplusage and the grammatical structure of Code § 84-1502.3 rendered meaningless. Moreover, the consequences of respondent's construction, graphically illustrated in the hypothetical of the performance of veterinary surgery, compel the conclusion that the General Assembly's intent was not that contended by respondent." *Held:*

1. There was sufficient evidence to support the findings of fact of the board. The principles of law, as stated by the board, were correct.

2. The appellant also contended that the statute in question, as construed by the board, was unconstitutional. However, when this case was originally filed in the Supreme Court that court held that no constitutional question was raised. *Brown v. Georgia State Board of Veterinary Medicine,* 232 Ga. 762 (209 SE2d 6).

*Judgment affirmed. Pannell, P. J., and Clark, J., concur.*

Submitted January 9, 1975 — Decided April 18, 1975.

*Sanders, Mottola, Haugen, Wood & Goodson, Gus L. Wood,* for appellant.

*Arthur K. Bolton, Attorney General, Robert S. Stubbs, II, Executive Assistant Attorney General, Don A. Langham, Timothy J. Sweeney, Assistant Attorneys General,* for appellee.