## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1999-SA-00916-SCT

*MISSISSIPPI BOARD OF VETERINARY MEDICINE, AND STUART C. DENMAN, D.V.M., BILLIE U. FLYNN, D.V.M., E. MACK HUDDLESTON, D.V.M., LOWELL N. ROGERS, D.V.M. AND JACK L. NUNNERY, D.V.M., INDIVIDUALLY AND IN THEIR OFFICIAL CAPACITIES AS MEMBERS OF THE MISSISSIPPI BOARD OF VETERINARY MEDICINE*

*v.*

*JOHNNY W. GEOTES, D.V.M.*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/05/1999 |
| TRIAL JUDGE: | HON. WALTER W. TEEL |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | C. MICHAEL MALSKI |
| ATTORNEY FOR APPELLEE: | SHIRLEY PAYNE |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | REVERSED - 8/17/2000 |
| MOTION FOR REHEARING FILED: | 8/31/2000; denied 11/22/2000 |
| MANDATE ISSUED: | 11/30/2000 |

**EN BANC.**

**BANKS, PRESIDING JUSTICE, FOR THE COURT:**

¶1. We have before us for review the issue of whether a letter, which specifically mentions the statute allegedly violated and has attached complaint letters of persons relating the factual predicate for the alleged violation, is enough to provide a veterinarian proper notice of the charges against him before the licensing board. We conclude that the notice is adequate, especially where, as it occurred here, the record before the Board of Veterinary Medicine is left open for thirty days, after taking the testimony of the complaining witnesses, to allow the accused an opportunity to respond to the charges against him. We also conclude that the statutory scheme provides a sufficient description of the conduct proscribed such that there is no due process violation. Accordingly, we reverse the chancery court's contrary judgment and reinstate the order of the Board which revoked the license of Johnny W. Geotes to practice veterinary medicine.

### I.

¶2. A letter dated May 10, 1996, was mailed to the appellee, Dr. Johnny W. Geotes ("Geotes"), from the appellant, the Mississippi Board of Veterinary Medicine (the "Board"). The letter stated:

> Two Complaints have been filed against you in connection with your practice of veterinary medicine. Copies of the complaints are attached. Please be advised that an informal hearing will be held on

these complaints on Thursday, June 6, 1996, at 10:30 a.m. at the Courtyard Marriot, 6820 Ridgewood Court Drive, Jackson, Mississippi.

Your attendance at this hearing is requested.

Should you have any questions regarding the above matter, please do not hesitate to contact this office.

Although this letter made reference to two attached complaints, it is not clear if they were attached.

¶3. A second letter dated May 15, 1996, was sent to Geotes. The second letter changed the hearing to a formal hearing. This letter also stated that the hearing would center "on a possible violation of § 73-39-19 (k) . . . ." Attached were two complaint letters. One from a cat owner describing a problem with treatment of her pet and another from a former employee describing a course of conduct involving the performance of procedures by unlicenced and uncertified staff arguably in violation of § 73-39-19(k). The latter complaint was subsequently withdrawn.

¶4. On October 15, 1996, Geotes's attorney received another letter which informed him that "additional complaints had been filed" and scheduled a hearing for October 25. On October 23, 1996, these complaints forwarded to Geotes along with a letter again referencing that a possible violation of § 73-39-19(k) was being considered and scheduling the hearing for November 15, 1996. These latter complaints were both from former employees and described a course of conduct similar to that depicted in the complaint which had been withdrawn.

¶5. Geotes challenged the sufficiency of the Board's procedure in federal court. The federal court abstained.

¶6. At the November 15 hearing, the Board heard evidence from the two new complainants, Crystal McKeever ("McKeever") and Ann Moran ("Moran"), both former employees of Geotes. No testimony was taken on the pet owner complaint and that complaint does not appear to have played a role in the proceedings. Each witness was cross-examined by Geotess attorney. The testimony related to the unauthorized practice of veterinary medicine by the witnesses and other employees.

¶7. At the conclusion of the presentation of those witnesses, the attorney for the Board announced that the Board would "leave the record open for thirty days to give [attorneys for Geotes] an opportunity to assess which would be the better approach for them to proceed, realizing that they could proceed with a spirited defense or it may well be that Geotes would want to take a different approach in the Board." This procedure was agreed to by counsel for Geotes, and it was understood that either side could put on additional testimony at the later hearing.

¶8. At the second session of the hearing, on December 16, 1996, the attorney for the Board reiterated that the Board had heard from Moran and McKeever and that, "[w]ith those two individuals having been heard from, no additional proof was put on relative to the charges that are presently are [sic] pending against Johnny W. Geotes." The attorney for the Board then turned the matter over to the attorney for Geotes for the presentation of a defense. Geotess attorney declined to present any evidence, claiming that the Board provided inadequate notice of the charges against Geotes.

¶9. The Board revoked Geotes's license on February 28, 1997. Geotes perfected an appeal to the Harrison County Chancery Court. The chancery court held "that the notice used by the [Board], and the

failure to promulgate rules, regulations and procedures have deprived [Geotes] of his rights to due process as guaranteed by the 14th Amendment to the United States Constitution." Accordingly, the Board's order was vacated, and Geotes's license was reinstated. The Board perfected this appeal.

## II.

### a.

¶10. In reviewing an administrative agencys findings of fact the appellate courts authority is generally limited by the arbitrary and capricious standard of review. *Mississippi Real Estate Comm'n v. Hennessee*, 672 So.2d 1209, 1217 (Miss. 1996). Matters of law, however, will be reviewed de novo. *McDerment v. Mississippi Real Estate Comm'n*, 748 So.2d 114, 118 (Miss 1999). "[A]n agency's decision will not be disturbed on appeal absent a finding that it (1) was [not] supported by substantial evidence, (2) was arbitrary or capricious, (3) was beyond the power of the administrative agency to make, or (4) violated some statutory or constitutional right of the complaining party." *Id.* (citations omitted). Deference is given to only an administrative boards knowledge within its own area of expertise, or afforded to an administrative agencys "construction of its own rules and regulations." *Id.*

### b.

¶11. The October 23 letter to Geotes specifically stated that the Boards inquiry was focused on a possible violation of Miss. Code Ann. § 73-39-19(k). Miss. Code Ann. § 73-39-19(k) permits the revocation or suspension of the license of a veterinarian for employing any person practicing veterinary medicine unlawfully with the knowledge of such illegal practice by said employee. Attached to the letter were written complaints by McKeever and Moran describing in detail how Geotes authorized them to perform veterinary procedures in his absence without training or supervision. Neither was licensed as a veterinarian nor certified as an animal technician pursuant to the statutory scheme regulating the practice of veterinary medicine.

¶12. In particular, Moran stated in her complaint that Geotes "had employees, with no prior training, diagnose, medicate and take call[s] when he was out of town or the country," "had employees put animals under anesthesia and sew up, x-ray, splint legs, etc., when he was out of town or even if he was in town," and "expected employees to start IVs, give vaccinations, do Heartworm Treatments, euthanize animals, etc." McKeever stated that, although she was not a trained medical person, her duties were "to give Vaccinations, I.V. or S.Q. shots, put in I.V. Catheters, Heart worm treatments, Diagnose & Dispense Meds., Stapling of Animals, Sedate & Prep for Surgery and Anesthetize."

¶13. Courts have never required that there be a particular form of notice or that particular procedures be adopted in order to satisfy constitutional due process requirements. Rather, it is well established that due process "is not a . . . fixed content unrelated to time, place and circumstances." *Cafeteria & Restaurant Workers Union v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961). Indeed, "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrisey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). The fundamental requirement of due process is simply the opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976)(citations omitted).

¶14. This Court has recognized that the formalities of practice, procedure, and evidence are relaxed in all administrative proceedings, "including those concerning licenses." *Riddle v. Mississippi State Bd. of Pharmacy*, 592 So.2d 37, 43 (Miss. 1991) (citing *Georgia-Pac. Corp. v. McLaurin*, 370 So.2d 1359 (Miss. 1979)). Further, due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections."*City of Tupelo v. Mississippi Employment Sec. Comm'n*, 748 So.2d 151, 153 (Miss. 1999) (citing *Booth v. Mississippi Employment Sec. Comm'n*, 588 So.2d 422, 427-28 (Miss. 1991) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950)).

¶15. This Court has upheld the constitutionality of the type of notice and hearing provided in this case. *Nelson v. Mississippi State Bd. of Veterinary Med.*, 662 So.2d 1058 (Miss. 1995). In *Nelson*, as in the present case, the Board sent Dr . Nelson a short letter informing him of the statutory sections he was alleged to have violated, Miss. Code Ann. § 73-39-19 (o) and (s), and notifying him of the time and place of the hearing. *Id.* at 1061. Rejecting Nelsons argument that the Board had violated his right to due process by failing to provide him with notice of the particular facts or conduct which warranted the proposed revocation, this Court found that the letter delineating the code section that Nelson was suspected of violating was adequate notice. *Id.* at 1062.

¶16. Here the Board notified Geotes of the precise statutory section which he was suspected of violating and heard only evidence relating to Geotess duties under that section.

¶17. In *Nelson*, the statute Dr. Nelson was accused of violating provided:

[T]he board . . . shall have the right and power to revoke or suspend the license of a veterinarian . . . for any of the following reason:

(o) Administering, dispensing or prescribing any narcotic drug having addiction-forming, addiction-sustaining or habituating liability otherwise than in the course of legitimate professional practice.

\*\*\*\*\*\*\*

(s) Being guilty of any dishonorable or unethical conduct likely to deceive, defraud or harm the public.

Miss. Code Ann. § 73-39-19 (o) & (s) (1988). The Board found Dr. Nelson guilty of violating both statutes. This Court affirmed.

¶18. Geotes was on notice that he would have to answer for unauthorized practice of veterinary medicine pursuant to the October 23 letter. The letter informed Geotes that a formal hearing was being held concerning "a possible violation of Miss. Code Ann. § 73-39-19(k), which permits the revocation or suspension of the license of a veterinarian for employing any person practicing veterinary medicine unlawfully with the knowledge of such illegal practice by said employee." Attached were two complaint letters filed by two former employees. The complaints stated that Geotes allowed his employees to diagnose, medicate, put animals under anesthesia, sew-up, x-ray, splints legs, etc., while he was out of the office. This was sufficient notice.

¶19. Moreover, in *State v. Blenden*, 748 So.2d 77, 90 (Miss. 1999), this Court held that even where proper notice is not given for a previous hearing, due process rights are not violated where at a subsequent

hearing the party is given an opportunity to be heard. Indeed, in *Blenden* Harrison County was not properly given notice for two hearings, but was properly given notice to a third subsequent hearing. *Id.* At the third hearing Harrison County was represented by counsel and given an opportunity to address fully and argue the County's position. Therefore the due process rights of Harrison County were not violated. *Id.*

¶20. Here, the chancery court held "the testimony given at the hearing cannot serve as notice of the charges that are being considered by the Board." (citing *In re Ruffalo*, 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968); *see also Peterson v. State*, 671 So.2d 647 (Miss. 1996)). In *Ruffalo*, however, the issue before the Court was the propriety of the action of an attorney disciplinary board in adding a charge against a defendant attorney after he had testified before the board, where the new charge concerned information which the attorney himself had provided to the board. Here, unlike in *Ruffalo,* no new charges were created after the testimony of the complaining witnesses were heard, and Geotes elected not to testify even though he was given thirty days in which to prepare. *Ruffalo* has no relevance to this case.

¶21. Here, Geotes was represented by counsel at both hearings and was given an opportunity to respond to the charges against him. Even if the previous notice was not adequate, it was cured by the Board leaving the record open and given Geotes thirty days to respond.

c.

¶22. Geotes argues that he has not received any rules of procedure or substantive rules of practice to which to conform his behavior.

¶23. Geotes asserts that the use of assistants in a veterinary practice is at least contemplated by the State Veterinary Board statute. It gives the definition that "'responsible supervision' or words or similar import means the control, direction and regulation by a veterinarian of the duties involved in the practice of veterinary medicine which he delegates to his unlicenced personnel." Miss. Code Ann. § 73-39-2(i) (1995), Geotes contends that this implies that some delegation of functions is permissible. He also contends that there is a conflict in our statutes in that our controlled substances law explicitly excepts from violations the use of controlled substances in treatment by veterinary assistants. Finally, he contends that the statute defining unauthorized practice leaves doubt as to which practices by his assistants were unlawful in that some of the activities described were with reference to employee owned or abandoned animals.

¶24. Although Geotes contends that the Board has provided no guidance as to what constitutes the unlawful practice of veterinary medicine, case law indicates that the terms used in the statute are adequate to advise veterinarians as to what is prohibited. Further, with regard to the absence of any procedural rules, as discussed above, this Court has already found that the procedures of the Board satisfy due process requirements, *Nelson*, 662 So. 2d at 1061-62, and has recognized that the procedures of a disciplinary board do not have to conform to any particular degree of precision. *Asher v. Mississippi Bar*, 661 So.2d 722, 728 (Miss. 1995).

¶25. There may be some confusion concerning exactly what constitutes supervision, however, much of the evidence before the Board established that many of the procedures occurred outside his presence and without his knowledge. Furthermore, there was evidence that when Geotes learned that his assistant performed such tasks he encouraged it and told them to call him only if they felt they could not handle it. This practice would not fit "responsible supervision" by any definition.

¶26. Moreover, the statutory scheme provides for certification of those who would provide medical services to animals under the supervision of a licensed veterinarian. Miss. Code Ann. § 73-39-34 (1995). Miss. Code Ann. § 73-39-2 (c) provides that an "'[a]nimal technician' is a person approved by [the Board under § 73-39-34] to perform acts relating to the maintenance of health or medical treatment of any animal . . . and . . . further, that the performance of such acts shall be directly and immediately supervised by a veterinarian duly licensed . . . ." Even certified animal technicians are prohibited from diagnosing, performing surgery, or prescribing medicine. Miss. Code Ann. § 73-39-2(c). The legislative intent is clear here. Miss. Code Ann. § 73-39-34(5) provides that the certificate which the certified technician receives must contain the following language clearly on its face:

> A certified animal technician may perform acts relating to maintenance of health of medical treatment of any animal within the State of Mississippi; provided, that the performance of such acts by the certified animal technician shall be directly and immediately supervised by a veterinarian duly licensed to practice in the State of Mississippi. No animal technician may diagnose disease, perform surgery or prescribe medicine.

¶27. The argument that our controlled substances law creates a conflict with the veterinary medicine regulatory scheme is a "red herring." Miss. Code Ann. § 41-29-305 (1995). The controlled substances law is designed to describe what is or is not permitted with respect to the use of controlled substances. It is not designed to define the scope of the proper practice of veterinary medicine. Geotes is not accused of violating the controlled substances law. While some of the testimony depicted improper distribution of controlled substances, the context was the unauthorized practice of veterinary medicine.

¶28. Finally, Geotes contends that the testimony included a description of acts which were arguably lawful because they involved animals owned by the employees themselves and abandoned animals. He contends that because the board did not clearly state that the code section defining veterinary practice was involved and because that section provides certain exceptions, he was harmed by the lack of board regulation further refining the statutory scheme.

¶29. The answer to this is simply that the testimony was not confined to instances which fit the exceptions noted in the statute. There was testimony that unauthorized practice was permitted with respect to animals owned by clients. The practice of veterinary medicine is defined by statute. No reference to that statute was necessary when Geotes, a licensed veterinarian, was charged with knowingly permitting unauthorized practice.

## IV.

¶30. For the foregoing reasons, the judgment of the Harrison County Chancery Court is reversed, and the license revocation order of the Board of Veterinary Medicine is reinstated.

¶31. **REVERSED.**

> **PRATHER, C.J., PITTMAN, P.J., McRAE, SMITH, MILLS, COBB AND DIAZ, JJ., CONCUR. WALLER, J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

> **WALLER, JUSTICE, DISSENTING:**

¶32. I respectfully dissent from the Court's decision to reverse the chancery court judgment and reinstate

the Board's decision to revoke Dr. Geotes's license to practice veterinary medicine. While I think that Dr. Geotes was afforded a constitutional level of notice and opportunity to be heard, I am troubled by this State's lack of guidance to veterinarians concerning what is and is not acceptable delegation of work responsibilities to subordinate employees.

¶33. Statute clearly allows a veterinarian to delegate duties to unlicenced personnel while maintaining responsible supervision over such employees. That responsible supervision is to mean control, direction and regulation of the duties involved in the practice of veterinary medicine. Miss. Code Ann. § 73-39-2(i) (1995). Testimony at the hearing conducted by the Board readily indicates that Dr. Geotes taught his employees as part of their training how to perform certain tasks and procedures to aid him in his practice of veterinary medicine. Dr. Geotes's attorney stated at the reconvened hearing that she was unable to adequately prepare a defense for Dr. Geotes because she had no rules or regulations governing the practice of veterinary medicine that she could use to show that Dr. Geotes's behavior conformed to standard practice. In other words, any testimony from Dr. Geotes could have further "incriminated" him, since he had no specific guidelines upon which to manage the conduct of his office other than his best judgment. His management of his employees would then be reviewed by the "best judgment" of the Board, hardly the kind of objective criteria upon which a license may be revoked.

¶34. *In re Ruffalo*, 390 U.S. 544, 88 S. Ct. 1222, 20 L. Ed. 117 (1968), involved an attorney who was disbarred by a federal court for, among another charge, conspiring with an investigator, Orlando, against Orlando's employer, Baltimore and Ohio Railroad Co. That charge was added during the hearing after both Ruffalo and Orlando testified that Ruffalo had hired Orlando to investigate FELA claims for him, and that Orlando had investigated some claims against his then current employer. The United States Supreme Court reversed the revocation of Ruffalo's license to practice law, since he was not afforded due process by the disbarment proceedings. 390 U.S. at 551. The Court said that Ruffalo was not informed that his hiring of Orlando would be considered a disbarment offense until after he and Orlando had both testified. *Id.* at 550-51. The Court held that procedural due process is not afforded if the charges become known after the proceeding for disbarment has commenced. *Id.* at 551.

¶35. In this case, while Dr. Geotes knew that he was being charged with a violation of Miss. Code Ann. § 73-39-19, knowingly employing an unlicenced person to practice veterinary medicine, he was never informed of what precisely that charge entails. The board's proceedings are adversarial in nature and quasi-criminal. *Ruffalo,* 390 U.S. at 551. Persons charged with crimes are constitutionally guaranteed specificity in the charges against them, and criminal laws are found to be void for vagueness if they do not provide a person of average intelligence fair notice of what activities are proscribed. *United States v. Harriss*, 347 U.S. 612, 617, 74 S. Ct. 808, 98 L. Ed. 989 (1954). Dr. Geotes should not and cannot be responsible for guessing what the Board would consider the unlicenced practice of veterinary medicine, especially when what is at stake is such an important, and constitutionally protected, liberty interest -- the right to practice one's chosen and learned profession.

¶36. The majority contends that case law defines what conduct is proscribed. While there are some cases from other jurisdictions that describe in more detail specific prohibited conduct, those cases do not govern the outcome of proceedings in Mississippi. *See Brown v. Georgia State Bd. of Veterinary Med.*, 215 S.E.2d 332 (Ga. Ct. App. 1975); *State ex rel. Med. Licensing Bd. v. Stetina*, 477 N.E.2d 322 (Ind. Ct. App. 1985); *Nickila v. Board of Chiropractic Examiners*, 862 P.2d 555 (Or. Ct. App. 1993). The majority also states that this Court has found the procedures of the Veterinary Board conform to due

process requirements. ***Nelson v. Mississippi State Bd. of Veterinary Med.***, 662 So. 2d 1058 (Miss. 1995). However, even as the Chancellor pointed out in her opinion in this case, that decision is clearly distinguishable from the one at issue. In ***Nelson***, the veterinarian was charged under Miss. Code Ann. § 73-39-19(o) for selling narcotics for use completely apart from his profession, and for trading drugs for sex. Not only is such a violation clearly prohibited by statute, any person would know that such practice is criminal and an abuse of a license to handle narcotics.

¶37. In *Ruffalo*, Justice White wrote a special concurrence stating that a proper inquiry in such situations is whether the practitioner would have been on notice that his conduct was to be condemned. *Ruffalo*, 390 U.S. at 554. Clearly proscribed conduct is conduct that is obviously criminal, as well as conduct that all reasonable members of the profession would recognize as inappropriate or unethical. ***Id.*** at 555. In this case, there is no indication that the occurrences ascribed to Dr. Geotes's employees actually occurred, or that these were not routine practices that occur in every veterinary office throughout the state.

¶38. There was no evidence presented by the Board that a reasonable veterinarian would consider these activities to be prohibited. It is entirely possible that many veterinarians, unknowing that the practice is prohibited since there are no written regulations, train their assistants to perform many of the named tasks in these allegations.

¶39. The testimony given at the hearing was from two embittered employees, one of whom Dr. Geotes had accused of misconduct, stealing money from his office. Many of the suspect procedures were likewise admittedly performed on abandoned animals or the employee's own animals, for which no compensation was received by Dr. Geotes, making such procedures not contrary to law at all. *See* Miss. Code Ann. § 73-39-33 (1995). The testimony here was of questionable integrity. In addition, since Dr. Geotes could not testify for fear of further incrimination, there is no real indication that Dr. Geotes knew of his employees' activities, if they had even occurred, other than the employees' own self-serving statements that Dr. Geotes had condoned their practice. There was no documented proof of specific animals where veterinary care was given by someone other than Dr. Geotes, but for which Dr. Geotes had been compensated.

¶40. The right to be licensed to practice one's chosen profession is constitutionally protected. The time and money spent on education to learn to practice veterinary medicine and to build up two successful practices is not to be taken lightly. Professionals are afforded constitutional protection to practice in their fields because it is indeed a severe punishment to take from someone their ability to achieve a livelihood by exercising their learned skills. In this case, I do not believe that the Board of Veterinary Medicine has proven that Dr. Geotes's license should be revoked. The Board has not promulgated any specific rules or regulations that it can say that Dr. Geotes violated. To conclude that Dr. Geotes has condoned the unlicenced practice of veterinary medicine using vague and ambiguous definitions of what constitutes that practice is the height of a due process violation. Dr. Geotes cannot defend against vague charges and allegations without some concrete guidelines defining the offense. Certainly the testimony given in this cause is insufficient to warrant a revocation of Dr. Geotes's license. I would affirm the judgment of the Chancery Court of Harrison County and, therefore, respectfully dissent.