KING, C.J.,
for the Court.
¶ 1. David C. Whalen brought suit in the DeSoto County Chancery Court against Pleasant Hill Water Association, Inc. (PHWA), a non-profit corporation, the City of Olive Branch, Mississippi, and the City of Southaven, Mississippi. Whalen claimed that the agreement to dissolve PHWA and transfer its assets to the respective cities was void because members were allowed to vote by proxy. Whalen filed an amended complaint in which sixty-one members of the water association joined as plaintiffs. Following trial, the chancellor ruled that the evidence failed to prove an individual cause of action by any of the plaintiffs. He also ruled that the plaintiffs had failed to make a demand on the corporation prior to filing suit and lacked standing to sue derivatively.
¶ 2. Whalen appeals and raises the following issues which we quote verbatim:
I. Do Appellants have standing?
II. Did Appellee Pleasant Hill Water Association fail to afford due process to the Appellants?
III. Is there a need for the appointment • of a receiver?
FACTS
¶ 3. Pleasant Hill Water Association, Inc. is a non-profit corporation rural water *252 association, which provides potable water to its members residing within its certificated area. The certificated area “lies in north DeSoto County, Mississippi between the cities of Olive Branch and Southaven.”
¶ 4. PHWA’s membership exceeds 2,000, and includes both domestic and commercial members. Since its inception in the 1960s, PHWA has never issued a membership certificate. However, Article V, Section 1 of its bylaws states that “the holders of membership certificates of this corporation are its members.” PHWA has a longstanding practice of maintaining a customer list of individual household and. corporate accounts, which is accepted as its membership roster.
¶ 5. Because of rapid population growth within its certificated area, the PHWA Board of Trustees determined that it was time for water to be provided by the municipalities rather than the water association.
¶ 6. On April 23, 2002, PHWA negotiated an agreement with the cities of Olive Branch and Southaven to transfer to them its assets. This agreement was contingent upon the approval of the PHWA membership and the aldermen of the respective cities.
¶ 7. On February 25, 2002, PHWA members were given notice of a special meeting, to be held on March 19, 2002, the purpose of which was to vote on whether to dissolve PHWA pursuant to the proposed agreement with Olive Branch and Southaven. Whalen was among the members who attended that meeting.
¶ 8. Whalen stated that he had spoken with the president of PHWA’s Board of Trustees about the proposed agreement and the issues surrounding the proposal prior to the special meeting and acknowledged being fully aware of the meeting’s purpose. Members attending the March 19 meeting were required to sign a registration sheet to cast a vote at the meeting. After questions by the members had been addressed, a vote was taken on a motion to approve the proposed agreement. Of the 194 members present and registered to vote, 130 votes were cast in favor of the proposed agreement and sixty-four votes were cast against the agreement.
¶ 9. At some point, Whalen discovered that a proxy vote had been counted on behalf of a PHWA member. The record does not reflect that Whalen contested this issue at the special meeting.
¶ 10. On March 20, 2002, Whalen contacted several members of the board of trustees regarding alleged improprieties in the voting procedures. He claimed that proxy voting had been permitted in contravention of the bylaws.
¶ 11. According to Whalen, he spoke .with William Scott, a member of the board of trustees. Scott indicated that the matter would be reviewed. Upon review of the allegations, Scott came to the conclusion that the allegation of improper voting was not well founded. At trial, Scott indicated that the voting procedures used at the special meeting were the same procedures which had been in place and used by PHWA for many years. Scott testified that even if the alleged proxy vote was thrown out, there would still be more than a two-thirds majority in favor of the proposed agreement.
¶ 12. Whalen was informed by the president of PHWA’s Board of Trustees that there would not be another vote taken. Whalen made no written demand for another vote, or any other type of corrective action of the board of trustees regarding the allegations.
¶ 13. On April 30, 2002, Whalen filed suit requesting (1) a declaratory judgment that the vote was void and (2) that a *253 receiver be appointed to supervise a new vote. The chancellor denied these requests.
¶ 14. In the judgment filed on January 28, 2003, the chancellor determined that there was no merit to the allegation of proxy voting and that the trustees followed the procedures which had been adopted and utilized for all prior meetings of the water association.
¶ 15. Whalen now appeals the chancery court’s decision.
STANDARD OF REVIEW
¶ 16. A chancellor’s findings “will not be disturbed when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong or clearly erroneous or applied an erroneous legal standard.” Longanecker v. Diamondhead Country Club, 760 So.2d 764(¶ 7) (Miss.2000).
ISSUES AND ANALYSIS
I.
Does Whalen have standing to sue?
¶ 17. Whalen claims that he and the other named plaintiffs have standing to sue because they were adversely impacted by the actions of PHWA. The plaintiffs’ allegations include: (1) that the cost for water usage will increase, (2) that the Summershill Fire Department will suffer loss because dues collected on its behalf by PHWA will no longer be collected in connection with the water bills, (3) that some members of PHWA will lose their jobs, and (4) that the ability to have influence regarding water services will diminish.
¶ 18. James Harris, water systems operator for PHWA, fire chief and president of the board of the Summershill Fire Department, testified that the decision to dissolve PHWA affected him individually because he would lose his job if this agreement were allowed to stand and that he would have to pay more for water. Harris also stated that the fire department would lose money because the water association collects fees for the fire department and. the fire department would have to hire someone to collect these fees which is not feasible. The trial judge held that Harris had not proven that he had any contract with PHWA that was breached, nor was there any tort committed by PHWA against Harris.
¶ 19. Herbert. Hunt, commissioner of Summershill Fire Department, testified as well. . Hunt also stated that his water rates would increase and that the fire department would have to hire someone to collect its fees which had been previously collected by PHWA.
¶ 20. Whalen testified that irregular voting procedures occurred at the special meeting. He stated that proxy voting had occurred, which should not have been allowed. Whalen stated that he would lose his job due to PHWA’s agreement with the cities of Olive Branch and Southaven. Whalen indicated that he had a,landscaping business which mowed the grass around some of the water facilities and that he would lose the arrangement to perform these services if PHWA were dissolved. Whalen indicated that he contacted some of the board members by phone to advise them of his complaint the day after the special meeting.
¶ 21. Upon review of the testimony, the chancellor determined that all votes cast complied with the proper voting procedures:' The chancellor found that the claim against PHWA was derivative and that neither Whalen nor any of the other plaintiffs' proved that PHWA committed a breach of contract, against them individually.' The chancellor also found that Whalen did not comply with the provisions of Mississippi Code Annotated Section 79-11-193 (Rev.2001) for bringing a derivative suit, which states in part:
*254 (1) A proceeding may be brought in the right of a domestic or foreign corporation to procure a judgment in its favor by:
(a) Any member or members having five percent (5%) or more of the voting power or by fifty (50) members; whichever is less; or
(b) Any director.
!(2) In any such proceeding; each complainant shall be a member dr director at the time of bringing the proceeding.
(3)A complaint in a proceeding brought in the right of a corporation must be verified and allege with particularity the demand made, if any, to obtain action by the directors and either why the complainants could not obtain the action or why they did not make the demand. If a demand for action was made and the corporation’s investigation of the demand is in progress when the proceeding is filed, the court may stay the suit until the investigation is completed.
¶ 22. Whalen argues that he and the other appellants have shown the following: (1) the appellants are more than fifty in number, (2) demand has been made requesting that the vote be considered void and a new vote taken or that it would have been futile to make such demand, (3) the appellants have acted in their own individual capacity, (4)they are complaining not about a wrong to the corporation, but about a wrong by the corporation against them, and (5) they will suffer individual loss by the action of the corporation. While Whalen makes this argument, he also maintains that the action is not derivative and that section 79-11-193 should not apply because he is not asking for a judgment in favor of the corporation, but for a judgment in favor of each of the named plaintiffs. Whalen claims that the verified complaint requirement applies to derivative actions brought on behalf of the corporation which he asserts is not the case.
¶ 23. The chancellor held that while the complaint had sixty-one plaintiffs, the plaintiffs joined the complaint by signing their names to the complaint but did not have their signatures notarized as required by Mississippi Code Annotated 79-11-193(3) (Rev.2001). The chancellor also noted that there was no written demand given to PHWA.
¶ 24. A demand is required to allow the corporation to take action to prevent divisive legal proceedings. Longanecker v. Diamondhead Country Club, 760 So.2d 764(¶ 13) (Miss.2000). Given this purpose of making demand, some meaningful opportunity for the directors to act after learning of a threat of suit on the issue is necessary. Id. The Mississippi Nonprofit Corporation Act, Miss.Code Ann. Sections 79-11-101-403 (Rev.2001), does not require any procedural formalities which must be followed when making a demand other than alleging with particularity the demand made or why the demand could not be made. Longanecker, 760 So.2d at (¶ 11).
¶ 25. While Whalen may have attempted to make an oral demand by contacting some of the board members by phone, this Court finds that such informal discussions as mentioned in this matter are inadequate.
¶ 26. The trial court found, and this Court agrees, that there was no breach of contract nor adverse action committed by PHWA against Whalen and the other named plaintiffs.
II.
Did Pleasant Hill Water Association afford due process to Whalen and the other named plaintiffs listed in the amended complaint?
¶ 27. Whalen claims that the named plaintiffs were denied due process. *255 As part of this denial of due process, Whalen argues that provisions of the written bylaws of PHWA were ignored during the special meeting. He -claims that proxy voting was allowed to take place. He claims that contrary to the bylaws, some members exercised more than one vote. He also claims that no membership certify cates had been given out by PHWA, and under the bylaws, only persons holding membership certificates are entitled to participate in and vote at membership meetings.
¶ 28. PHWA stated that, since its inception, it has never issued membership certificates nor has anyone ever asked for a membership certificate. PHWA argues that, by failing to object for more than thirty years to the non-issuance of membership certificates, the members have effectively waived and repealed the requirement for membership certificates as provided in the bylaws. PHWA relies on Bank of Holly Springs v. Pinson, 58 Miss. 421, 439 (1880) where the supreme court noted that “[b]y-laws need not be in writing. They may be adopted as well by the company’s conduct, and the acts and conduct of its officers, as by an express vote or an adoption in a meeting.” Clearly the practice of allowing voting from the customer list was a de facto amendment of the bylaws.
¶29. While no formal demand was made upon the board of trustees, it met and discussed the allegations made by Whalen and determined that there were no irregularities in the voting procedures. Scott, a member of the board of trustees, stated that the voting procedures used had been in place and used consistently for many years.
¶ 30. The chancellor also determined that Whalen failed to prove that improper voting existed. This Court cannot say that Whalen and the other named plaintiffs were not afforded due process. “[D]ue process requires ‘notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections.’ ” Mississippi Bd. of Veterinary Medicine v. Geotes, 770 So.2d 940(¶ 14) (Miss.2000). Whalen and the other named plaintiffs were given notice of the purpose of the special meeting and given an opportunity to be heard. Pickle v. IGT, 830 So.2d 1214(¶ 22) (Miss.2002); Mississippi Bd. of Veterinary Medicine, 770 So.2d at (¶ 13). Additionally, the Board considered and determined that there was no validity to Whalen’s claims.
¶ 31. This Court finds that this issue is without merit.
III.
Whether there is a need for the appointment of a receiver.
¶ 32. This issue is moot.
¶ 33. THE JUDGMENT OF THE DE-SOTO COUNTY CHANCERY COURT IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
BRIDGES, P.J., LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.