# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CA-01166-COA

**CHRISTOPHER BAILEY KEETON, A MINOR,**         **APPELLANT**
**BY AND THROUGH HIS NATURAL GUARDIAN**
**AND NEXT FRIEND, ALISON GRAY**

**v.**

**OCEAN SPRINGS SCHOOL BOARD**         **APPELLEE**

DATE OF JUDGMENT:         07/18/2017
TRIAL JUDGE:         HON. ROBERT P. KREBS
COURT FROM WHICH APPEALED:         JACKSON COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:         G. CHARLES BORDIS IV
ATTORNEY FOR APPELLEE:         ALWYN H. LUCKEY
NATURE OF THE CASE:         CIVIL - OTHER
DISPOSITION:         AFFIRMED: 01/31/2019
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE GRIFFIS, C.J., BARNES AND CARLTON, P.JJ.

### GRIFFIS, C.J., FOR THE COURT:

¶1. Christopher Bailey Keeton was suspended from Ocean Springs High School for a violation of the school district's alcohol policy. The decision was appealed to the circuit court, and a motion for injunctive relief was filed. The circuit court dismissed the appeal and denied the motion for injunctive relief. We find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. In 2016, Keeton was an eleventh grader at Ocean Springs High School. In April of 2016, he attended the high school's prom in Biloxi. Keeton and several other students traveled to the prom in a "party bus." Alcohol was consumed on the party bus. After Keeton

returned home, he was contacted by the high school's administrator and told to return to the prom. Keeton was then questioned by the administrator and the Biloxi Police Department about suspected alcohol use.

¶3. Keeton admitted that he saw other students with alcohol in Gatorade bottles on the party bus. In his signed statement, Keeton admitted that he "drank less than three sips" and that he "just rode here didn't drink here at all, or on the bus at all except for three sips." Keeton stated that several people drank more than the "legal amount." Several other students offered accounts of the evening that were similar to Keeton's account.

¶4. The school district has a policy that prohibits alcohol, and it reads:

> Any pupil who physically possesses, actually possesses, constructively possesses, uses, consumes, . . . alcohol, beer, or any other intoxicant or liquor . . . while in school, . . . during participation in or attendance at . . . extracurricular activities, . . . events, . . . or other school activities, during travel by the student to and from . . . extracurricular activities . . . events, . . . or other school activities shall be disciplined in accordance herewith as follows:
>
> 1. Any pupil who shall actually and/or physically possess alcohol, beer, liquor or any other intoxicant shall be suspended for up to ten (10) days OSS - Out of School Suspension, and shall be recommended for expulsion to the Alternative Education Center for a period of not less than 45 days of school, with consideration being given to the circumstances surrounding each use, including but not limited to the class schedule of the student.
>
> 2. Any pupil who shall constructively possess beer, liquor, or any other intoxicant shall be suspended for up to ten (10) days and consideration shall be given to the circumstances surrounding each case, including but not limited to the class schedule of the student and the extent of the student's awareness of the presence of alcohol, beer, liquor or any other intoxicant. Therefore, a student may be recommended for expulsion based upon findings of the school administrators.

¶5. The school district has a similar policy for the use or possession of drugs. However, the punishment for the drug policy is more severe—punishment through suspension for a period of not less than thirty-six weeks and expulsion.

¶6. The school district also has a policy for "Due Process" and the "Appeals of Suspensions and Expulsions." This policy separates a student's due process rights into two categories.

¶7. Class I involves students who are accused of a violation of the drug policy, weapon policy, or who are accused of violence on school property. With a Class I violation, the student has a right to appeal to the school board, and the violator remains expelled or suspended during the appellate process.

¶8. Class II involves students who are "suspended and/or expelled for any reason other than a violation of the district's drug policy, weapon's policy or for committing a violent act on educational property." With a Class II violation, the student has a right to appeal first to the "District Discipline Committee" and then to the school board. Unlike a Class I violator, a Class II violator is allowed to return to school during the appeal.

¶9. Here, the assistant principal recommended that Keeton receive a ten-day suspension and a forty-five day expulsion to the Alternative Education Center. Keeton and his parents provided notice of their intent to appeal the recommendation. Although Keeton was classified as a Class II violator, the school district treated Keeton as a Class I violator during the appellate process. As a result, Keeton was unable to first appeal to the "District Discipline Committee" and was prohibited from returning to his normal classroom setting.

3

¶10.   On May 13, 2016, the school district's Board of Trustees heard Keeton's appeal and accepted the assistant principal's recommendation.  Keeton then appealed the decision to the circuit court.  Keeton also filed a motion for injunctive relief and requested that his expulsion be postponed during the appellate process in accordance with the school district's policy.  The circuit court denied the motion and dismissed Keeton's appeal as moot because Keeton had already graduated from high school.  The circuit court determined that no existing case or controversy was pending and found that "[s]ince then[,] Ke[e]ton served his punishment at the start of the 2016-2017 school year and has since graduated from Ocean Springs High School, making the issue moot. . . . [E]ven if the issue were not moot, the [c]ourt would have found in favor of the Ocean Springs School District."  It is from this judgment that Keeton now appeals.

## STANDARD OF REVIEW

¶11.   "When this Court reviews a decision by a chancery or circuit court concerning an agency decision, it applies the same standard of review that the lower courts are bound to follow."  *Hinds Cty. Sch. Dist. Bd. of Trs. v. R.B.*, 10 So. 3d 387, 394 (¶17) (Miss. 2008).  "This Court reviews an administrative agency decision to determine whether the decision (1) was unsupported by substantial evidence, (2) was arbitrary or capricious, (3) was beyond the power of the administrative agency to make, or (4) violated some statutory or constitutional right of the complaining party."  *Id*. at 394-95 (¶17).

## ANALYSIS

1.   *Whether the Ocean Springs School District failed to comply with requirements regarding the need to maintain a record of the hearing*

4

*conducted before the school board.*

¶12. In the first issue, Keeton argues that the school district failed to make a record of the school board hearing. Mississippi Rule of Appellate Procedure 28(c)(7) provides that the appellant's brief "shall contain the contentions of appellant with respect to the issues presented, and the reasons for those contentions, with citations to the authorities, statutes, and parts of the record relied on." "[I]f an appellant fails to support h[is] allegation of error with argument or authority, this Court need not consider the issue." *Jordan v. State*, 995 So. 2d 94, 103 (¶14) (Miss. 2008). Because Keeton failed to cite any authority to support this allegation of error, we decline to consider this issue.

> 2. *Whether Keeton's due process rights were violated by the school district's failure to follow its own policy in affording Keeton two separate hearings.*

> 3. *Whether the circuit court erred and applied an erroneous legal standard in finding that Keeton's due process rights were not violated and that the school district followed its policy.*

¶13. We consolidate issues 2 and 3 because they address similar issues.

¶14. Under the school board's policy, Keeton's violation was a Class II violation. For Class II violations, the student has a right to appeal first to the "District Discipline Committee." Then, the student has another right to appeal to the school board. Keeton claims the school district's failure to provide two separate hearings violated his right to due process. The school district, however, claims that Keeton was afforded the required minimal due process.

¶15. In the final judgment dated July 18, 2017, the circuit court found as follows:

5

[Keeton]'s arguments of due process violation centers around an Ocean Springs School District policy that lays out the process for appealing suspensions and expulsion. This policy separates appeals and suspension into two classes: Class I governs the procedure for students who are suspended or expelled for violating the district's drug policies, weapon policies, or committing violent acts on education property and Class II governs any reason that is not governed under Class I. Appellant contends that he should have been classified under Class II and would have therefore been entitled to a hearing before the District Discipline Committee and that the OSSD's failure to place him in this category and its failure to let Keeton have a hearing before the District Discipline Committee is a violation of his due process rights. This argument does not have any merit as the consumption of alcohol would be a violation of Ocean Spring School District's drug policy placing him within Class I. Ocean Springs School District followed all of its policies pursuant to Class I, therefore, there was no due process violation.

¶16. The circuit court is simply incorrect as a matter of law in this finding. The school district has a separate "drug" policy and "alcohol" policy. A Class I violation only involves students that are accused of a violation of the drug policy, weapon policy, or who are accused of violence on school property. A violation of the "alcohol" policy is not included in Class I violations. Accordingly, the circuit court erred as a matter of law when it stated that Keeton was a Class I violator. Despite this finding, the school board correctly argues that Keeton received minimal due process and was not deprived of any substantive right.

¶17. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Warnick v. Natchez Community Hosp. Inc.*, 904 So. 2d 1019, 1022 (¶14) (Miss. 2004) (internal quotation mark omitted). "Courts have never required . . . that particular procedures be adopted in order to satisfy constitutional due process requirements." *Miss. Bd. of Veterinary Med. v. Geotes*, 770 So. 2d 940, 943 (¶13) (Miss. 2000). "[D]ue process is not a fixed content unrelated to time, place and

6

circumstances." *Id.* "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Id.* Moreover, "the formalities of practice, procedure, and evidence are relaxed in all administrative proceedings . . . ." *Id.* at (¶14).

¶18.    The supreme court has clarified the process that is due in school discipline cases. "The standards of procedural due process are not wooden absolutes." *R.B.*, 10 So. 3d at 398 (¶28) (quoting *Keough v. Tate Cty. Bd. of Educ.*, 748 F.2d 1077, 1081 (5th Cir.1984)). "The sufficiency of procedures employed in any particular situation must be judged in the light of the parties, the subject matter and the circumstances involved." *R.B.*, 10 So. 3d at 398 (¶28). "[N]otice and opportunity to be heard are minimal requirements of the Due Process Clause." *Id.* at (¶29). Due process requires "nothing more" than giving the appellant a hearing "to present all relevant evidence" and to allow the appellant's claims to be heard "at a meaningful time and in a meaningful manner." *Warnick*, 904 So. 2d at 1023 (¶19).

¶19.    In *R.B.*, the appellant argued that "where a school district's own policy has created a right to more than a minimal amount of process, failure by the school district to provide such additional procedures results in a due process violation." *R.B.*, 10 So. 3d at 399 (¶32). Yet, the supreme court found that "the procedures implemented by the School Board [were] sufficient where R.B. (1) was apprised of the nature of the charges; (2) was given a list of potential witnesses; (3) was informed of his right to counsel; and (4) was given notice and opportunity to speak on his own behalf and to call any others with relevant information." *Id.* at 401 (¶38).

¶20.    Here, we find the circuit court erred in its conclusion that Keeton was a Class I

violator and was afforded proper due process. Although the school district failed to provide Keeton his right to an appeal first to the "District Discipline Committee," we find that Keeton was afforded minimal due process through his appeal to the school board. Thus, we find no merit to these issues.

4. *Whether the circuit court committed manifest error in denying the requested injunctive relief.*

¶21. On May 18, 2016, the assistant superintendent of the school district advised Keeton's mother that the school board had upheld the suspension and forty-five day expulsion to the Alternative Education Center. Keeton commenced the appeal to the circuit court on May 24, 2016. The 2015-2016 academic year ended on or about May 24, 2016.

¶22. Keeton filed a motion for injunctive relief and asked the circuit court to stay the school board's decision to suspend and expel Keeton. The movant also asked the circuit court to order Keeton's return to the normal academic curriculum and classroom setting during the pendency of the appeal. Shortly before the start of the 2016-2017 academic year, the circuit court denied the motion for injunctive relief. The circuit court's order was dated August 12, 2016, and gave no reason for the denial of injunctive relief.

¶23. As we have discussed above, the circuit court was in error to deny the motion for injunctive relief. As a Class II violator, based on the school district's policy, Keeton was entitled to have his suspension and expulsion stayed during the pendency of his appeal, which included his appeal before the circuit court and before other appellate courts.

¶24. Keeton timely filed a motion to alter or amend the order denying the motion for injunctive relief, for reconsideration, or for a new trial. The circuit court entered an order,

dated April 4, 2017, that denied this motion. Because Keeton's suspension and expulsion were based upon an alleged Class II violation, Keeton should have been allowed to return to the classroom setting pending the outcome of his appeal. The circuit court was in error to classify Keeton as a Class I violator. Accordingly, Keeton should have been granted injunctive relief to return to the classroom setting pending the appeal.

> 5. *Whether the circuit court committed manifest error in dismissing the appeal as moot.*

¶25. Ultimately, the circuit court entered a final judgment and found:

> Since then[,] Keeton served his punishment at the start of the 2016-2017 school year and has since graduated from Ocean Springs High School, making the issue moot.
>
> Furthermore, even if the issue were not moot the Court would have found in favor of the Ocean Springs School District. The standard of review for an administrative agency decision is "whether the decision (1) was unsupported by substantial evidence, (2) was arbitrary or capricious, (3) was beyond the power of the administrative agency to make, or (4) violated some statutory or constitutional right of the complaining party." [*R.B.*, 10 So. 3d at 395 (¶17)]. The decision of the Ocean Springs School District was supported by the fact school officials observed alcohol on the "party bus", other students['] written statements saying that Keeton drank three sips, and Keeton admitting to drinking out of a bottle that contained alcohol. The decision was not arbitrary or capricious. It was within the agency's power to make and it did not violate any statutory or constitutional rights of the complaint party. . . .

¶26. The circuit court determined that the issue was moot. In addition, the circuit court examined the school board's decision and concluded it was supported by substantial evidence, was not arbitrary or capricious, was within the school district's power, and did not violate a statutory or constitutional right of Keeton. *R.B.*, 10 So. 3d at 395 (¶17).

¶27. This Court will examine the circuit court's substantive decision and not the decision

9

to deny the appeal on the grounds that it was moot.

¶28. The school board's decision was based on substantial evidence. A school official observed alcoholic beverage containers on the party bus that Keeton admitted he used to travel to the prom. Further, Keeton admitted that he consumed three sips from the alcoholic beverage containers on the party bus on the way to the prom. Keeton said "I will admit I drank less than three sips . . . . People that were on there drank more than the legal amount. I . . . didn't drink . . . except for 3 sips." There was substantial evidence that Keeton referred to the consumption of alcoholic beverages in his admission.

¶29. In *R.B.*, the student was suspended for possession of a knife and drugs. *Id.* at 390-91 (¶2). There was a dispute about whether the instrument was a knife or nail file. *Id*. at 396 (¶21). The supreme court reversed this Court and ruled:

> The Court of Appeals judges . . . viewed the actual instrument and determined that the device was not a knife, but an unaltered nail file . . . . However, from the record and the applicable law, it is obvious that the plurality, contrary to the factual findings of the School Board, substituted its own judgment for that of the School Board. This Court respectfully disagrees with the plurality's findings as to the seized weapon. The record reveals that there exists a reasonable basis to conclude that the object in question was a knife, as categorized by Principal Campbell and the school resource officer present at the time the instrument was confiscated.

*Id*. The supreme court concluded that the school board's decision was based on substantial evidence consisting of "the Appeals Committee's recommendation; the descriptions of the object by the principal, school resource officer, and superintendent; a photocopy of the object; D.L.B.'s oral arguments and written statement on behalf of R.B.; and the instrument that D.L.B. presented to the School Board during the hearing and described as identical to

10

the one confiscated from R.B." *Id.* at (¶22).

¶30. In addition, the student "admitted that he considered this device a 'knife'—describing it as his 'slicer' that he used for cutting boxes." *Id.* at 396-97 (¶23). In upholding the discipline, the supreme court concluded that:

> the role of this Court is limited to determining whether there exists a reasonable basis for school officials to find that it could potentially cause harm to other students. The dissent would have us ignore our role and substitute the judgment of this Court for that of the School Board; however, where a reasonable factual basis for the charge exists, the School Board was within its discretion to strictly apply and construe its own policies as to what constituted a weapon and what punishment was appropriate.

*Id.* at 397 (¶24). The supreme court ultimately held that "[w]hile it is true that there are many punishments that would seem less harsh or more appropriate in this case, we must recognize that the law commits this entire matter to the discretion of the school board." *Id.*

¶31. Here, Keeton's own admission coupled with the assistant principal finding the alcohol containers on the bus and fellow students' statements that everyone was drinking provides far more evidence. When we consider the ultimate decision of the circuit court, we find that there was substantial evidence to support the school board's decision, the decision was not arbitrary or capricious, it was within the school district's power, and it did not violate Keeton's statutory or constitutional rights.

¶32. **AFFIRMED.**

**BARNES AND CARLTON, P.JJ., GREENLEE, TINDELL AND LAWRENCE, JJ., CONCUR. WILSON, J., CONCURS IN PART AND IN THE RESULT WITH SEPARATE WRITTEN OPINION, JOINED BY GREENLEE, J.; TINDELL, J., JOINS IN PART. WESTBROOKS, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. McCARTY, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED**

**BY WESTBROOKS AND McDONALD, JJ.**

**WILSON, J., CONCURRING IN PART AND IN THE RESULT:**

¶33.   I concur in the result reached by the majority but for somewhat different reasons.

¶34.   An appeal from a school board's disciplinary decision "shall be taken in the same manner as appeals are taken from judgments or decisions of the board of supervisors as provided in Section 11-51-75" of the Mississippi Code.  Miss. Code Ann. § 37-7-115 (Rev. 2014); *see M.L.R. v. Pontotoc City Sch. Dist. Bd. of Trs.*, 46 So. 3d 874, 877 (¶11) (Miss. Ct. App. 2010).  When Keeton filed his appeal in this case, section 11-51-75 provided for an appeal by "a bill of exceptions."  Miss. Code Ann. § 11-51-75 (Rev. 2012).[1]  In such an appeal, "the aggrieved party"—i.e., the appellant—has the "duty to prepare the bill of exceptions," *Pruitt v. Zoning Bd. of Laurel*, 5 So. 3d 464, 469 (¶15) (Miss. Ct. App. 2008), and "the responsibility to ensure that all relevant material [is] included in the bill of exceptions." *Brinsmade v. City of Biloxi*, 70 So. 3d 1159, 1165 (¶23) (Miss. Ct. App. 2011).

¶35.   The aggrieved party's duty to prepare a sufficient bill of exceptions is important because "[i]t is well settled that the bill of exceptions constitutes the record on appeal . . . , and the circuit court must not consider matters that are not a part of that record." *Id.* Therefore, it is equally "clear that failing to embody a sufficient record in the bill of exceptions can be fatal to the attempted appeal." *Allen*, 242 So. 3d at 21 (¶49).  "[S]uch has been the case since the first days of our State." *Id.* "If the bill of exceptions is not complete

---

[1] Section 11-51-75 was amended after Keeton filed his appeal.  *See* Miss. Code Ann. § 11-51-75 (Supp. 2018); 2018 Miss. Laws ch. 448.  Those amendments have no effect on Keeton's appeal.  2018 Miss. Laws ch. 448, § 2.  For a history and discussion of appeals by bill of exceptions, see *City of Jackson v. Allen*, 242 So. 3d 8, 14-26 (¶¶24-66) (Miss. 2018).

and is fatally defective in that pertinent and important facts and documents are omitted therefrom, then the [circuit] court does not have a record upon which it can intelligently act." *Pruitt*, 5 So. 3d at 469 (¶14) (quoting *Hollywood Cemetery Ass'n v. Bd. of Mayor & Selectmen of McComb*, 760 So. 2d 715, 719 (¶16) (Miss. 2000)). If the bill of exceptions does not set our facts sufficient to support the aggrieved party's claims of error, then the board's decision must be affirmed. *Id.* at (¶¶15-16).

¶36. The bill of exceptions filed in this case provides almost no information about the hearing before the school board or the evidence presented to the board. Thus, the bill of exceptions "could not possibly provide all of the facts necessary to establish [Keeton's] claim of error." *Id.* at (¶16). This failure is "fatal to the attempted appeal." *Allen*, 242 So. 3d at 21 (¶49). Therefore, I agree that the school board's decision should be affirmed.

**GREENLEE, J., JOINS THIS OPINION. TINDELL, J., JOINS THIS OPINION IN PART.**

**McCARTY, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶37. While he was in 11th grade, a teenager admitted he drank three sips of spiked Gatorade on a bus heading to prom. The majority concludes the circuit court erred as a matter of law when it ruled that the child was a Class I violator. The majority also concludes that the child should have been granted injunctive relief to return to class during the pendency of his appeal. I concur with both conclusions. Yet because these conclusions do not lead to reversal, I must respectfully dissent in part.

¶38. Under our standard of review, when a decision "was beyond the power of the administrative agency to make," it must be reversed. *Hinds Cty. Sch. Dist. Bd. of Trs. v. R.B.*

13

*ex rel. D.L.B.*, 10 So. 3d 387, 395 (¶17) (Miss. 2008). If the school cannot be trusted to follow the rules, it seems perverse to not only force a child to observe them, but to punish him for a rule he did not break. The school did that which it could not do under its own rules, and this requires reversal.

¶39. I likewise agree the issue is not moot. The child and his family still suffer the harm of the expulsion, which cannot be cured at this point, as it has already been served. Counsel for the family points out that it remains upon the records of the school. Therefore the case cannot be moot because it could visit a "practical benefit to the plaintiff or detriment to the defendant." *In re Validation of Tax Anticipation Note, Series 2014*, 187 So. 3d 1025, 1032 (¶17) (Miss. 2016) (internal quotation mark omitted).

¶40. As to the first issue raised by the child and his family – that the school failed to produce a record of the proceedings – the majority concludes that the issue was waived for failure to provide argument of authority in support. From the face of the family's brief, this is simply incorrect. Our Rules require that an "argument shall contain the contentions of appellant with respect to the issues presented, and the reasons for those contentions, with citations to the authorities, statutes, and *parts of the record relied upon*." M.R.A.P. 28(a)(7) (emphasis added).

¶41. In its brief, the family argues that "[t]he district, by and through its president, executed a Bill of Exceptions and filed the same in this cause," and "represented in the Bill of Exceptions that a complete record of the proceedings before the Board of Trustees would be presented to the [circuit] court." The family then cites to two sections of the record before

this Court. Although the Bill was drafted by counsel for the family, it does carry the signature of the President of the Board of Trustees. This argument satisfies Rule 28.

¶42. The family's argument can be further distinguished from the case relied upon by the majority, where a defendant's "appellate counsel cites no authority, nor does he direct the Court to any objection by defense counsel at trial or ruling of the trial court that would constitute reversible error," and the Court ruled that "[t]he issue is completely devoid of any specific allegation of error by [the defendant]." *Jordan v. State*, 995 So. 2d 94, 103 (¶14) (Miss. 2008). In this case, the family repeatedly urged that the failure to tender a record of the proceedings damaged the ability of any reviewing court to determine what happened below. I would find the issue was not waived.

¶43. Further, we know that the record is critical since this is the review of an administrative decision, which must be based solely upon the record. *See R.B.*, 10 So. 3d at 394 ("where the Supreme Court cautioned that "appellate review of this administrative decision should not have gone beyond the record"). A record is always important in an appeal, but is the lifeblood of an administrative appeal. Many appeals, such as *R.B.*, turn on whether the decision was arbitrary or capricious. *Id*. at 394-96. Without a record, such an appeal is impossible. Again, I would not find this issue waived because since it is so critical to reviewing an appeal of this nature.

¶44. For these reasons, I concur in part and respectfully dissent in part.

**WESTBROOKS AND McDONALD, JJ., JOIN THIS OPINION.**

15