ISHEE, J„
 

 for the Court:
 

 ¶ 1. A high-school student, who was expelled from school for a year for having drugs in her car on campus, attempted to appeal that expulsion to circuit court. The Circuit Court of Pontotoc County found that the appeal was not properly filed; therefore, the court lacked jurisdiction and dismissed the appeal. Finding no error, we affirm the circuit court’s judgment.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. M.L.R.,
 
 [1]
 
 a minor, was an eleventh-grade student at Pontotoc City High School during the 2007-2008 school year. On September 24, 2007, school officials, along with officers with the Pontotoc Police Department and the Tupelo Police Department’s canine unit, conducted a search of the high school’s parking lot. Officer Nichole Doss’s drug dog, Caneek, alerted on a 1991 Mazda in the school’s parking lot. The school’s parking sticker showed that the car was brought to school by M.L.R. M.L.R. was called to the scene and asked by the law enforcement officials for permission to search the car’s interior; she voluntarily consented to the search. When asked before the search if there were drugs in the vehicle, she said no. During the search the officers found .6 gram of marijuana in the automobile. Immediately, M.L.R. denied knowledge of the marijuana and volunteered to take a drug test.
 
 [2]
 
 She told the officers that she had lent the vehicle to other students over the weekend and that the bag in which the marijuana was found was not hers.
 

 ¶ 3. In accordance with the state’s zero-tolerance drug policy,
 
 [3]
 
 Principal David Tudor, notified M.L.R. and her mother that M.L.R. was immediately subject to a ten-day suspension and that his recommendation to the Superintendent of Education, Conwell Duke, would be that she be expelled for the rest of the 2007-2008 school year. A charge for misdemeanor possession of marijuana inside a motor vehicle was lodged against her the same day by the Pontotoc City Police. The record does not reflect what, if any, resolution was made in that case. On September 25, 2007, Superintendent Duke sent a letter to M.L.R. and her mother, R.Y., notifying them that he had accepted the principal’s recommendation for a year-long suspension. The letter also advised them that they were entitled to a due-process hearing at which they could present “any evidence in rebuttal or mitigation of the allegations” made against M.L.R. and that they could question any witnesses having knowledge of the matter. R.Y. requested a hearing. By letter, Superintendent Duke advised R.Y. that a hearing before the Pontotoc City School District Board of Trustees would be held at 7:30 a.m. on October 8, 2007, to consider M.L.R.’s suspension.
 

 ¶4. Both the attorney for M.L.R. and for the Board agree that a hearing was, in fact, held. There is no transcription of the
 
 *876
 
 hearing in the record. According to the briefs, both sides attempted to record the due-process hearing, but each recording resulted in poor quality. According to both parties’ briefs, the following attended the hearing: M.L.R.; R.Y.; Superintendent Duke; school board members Charlotte Bass, Rene Simon, Thomas Chewe, Davis Ray; and school-board attorney, Phillip L. Tutor. The attorney for M.L.R. claims that no witnesses were called by the school-board attorney and that the police reports of the drug discovery were the only evidence presented. The school-board attorney asserts for the Board that Superintendent Duke was sworn and called as a witness for the school administration. The school board’s attorney contends that the police incident report and the student’s school record were admitted through Superintendent Duke’s testimony. The school-board attorney states that Superintendent Duke was cross-examined by R.Y. on behalf of M.L.R., after which R.Y. and M.L.R. were sworn, and both testified. M.L.R.’s potential expulsion was taken up near the end of a long meeting. Ultimately, the Board found that M.L.R. “did commit the offenses alleged in the notice sent to her” and found that she should be suspended until August 1, 2008, including exclusion from all extracurricular events. R.Y. was advised of her daughter’s expulsion by a letter dated October 11, 2007, from Superintendent Duke.
 

 THE ATTEMPTED APPEAL
 

 ¶5. On October 18, 2007, R.Y. filed a twelve-page document in the Circuit Court of Pontotoc County styled “Bill of Exceptions,” which R.Y. signed on behalf of M.L.R. She also made an identical filing in the Pontotoc County Chancery Court. On the final page of her filing, there was a line for the signature of the president of the Pontotoc City School District, but there was no signature on the line. Attached to this filing were thirty-four “exhibits,” which included various letters and policies of the school district, and the final page was a handwritten document by R.Y. stating that she “tried diligently to get the president of the Pontotoc City School Board (Charlotte Bass) to sign the appeal document.” The document said that Bass “refused to sign until the attorney for the Board review[ed] the documents.” R.Y. then wrote that she delivered a copy of the documents to the school-board attorney.
 

 ¶ 6. The Board responded by filing a motion to strike R.Y.’s pleading or, in the alternative, to dismiss it. The Board argued that R.Y. had failed to file a proper appeal under Mississippi Code Annotated sections 37-7-115 (Rev.2007) (appeals from school board orders) and 11-51-75 (Rev. 2002) (appeal from decision of board of supervisors or municipal authorities). The school board argued that the bill of exceptions had not been signed by the appropriate official as required by section 11-51-75, and the documents attached to it were nothing more than an appellant’s brief with a recitation of her version of the “facts” and a summation of the argument. Interestingly, the Board attached to its motion to dismiss what it called a legally sufficient bill of exceptions which included various disciplinary notices against M.L.R.-most involving unexcused tardies. The Board’s sample bill of exceptions was also not signed by the president of the school board.
 

 ¶ 7. In January 2008, counsel of record for M.L.R. made an entry of appearance in the case and responded to the motion to strike. The circuit judge set the matter for hearing and allowed the parties to file appellate briefs, which each side did.
 

 ¶ 8. On May 15, 2009, the circuit court issued its order, which set out the facts in the first paragraph; then in the second
 
 *877
 
 paragraph, the court noted that M.L.R. had filed a pleading titled “bill of exception” in both the circuit and chancery courts. The circuit judge found that the bill of exceptions “did not comply with the statutory requirements for such causes of actions.”
 

 ¶ 9. The circuit court found that the bill of exceptions was improper; therefore, the court had no jurisdiction. However, notwithstanding its finding of a lack of jurisdiction, the circuit court in the next paragraph proceeded on and found that there was substantial evidence to support the decision of the Board and held that the Board’s decision to expel M.L.R. was not arbitrary and contained no errors of law. The final paragraph of the order reads: “It is therefore Ordered and Adjudged that this cause be and the same is hereby affirmed and shall be dismissed from the Circuit Court of Pontotoc County, Mississippi.” It is from this order that M.L.R. has appealed.
 

 ANALYSIS
 

 ¶ 10. In Mississippi, superintendents and principals are given the power to suspend students for good cause. Miss.Code Ann. § 37-9-71 (Rev.2007). The state has codified infractions for which a student can be disciplined. One such infraction requiring automatic expulsion is the possession of a controlled substance in any school. Miss.Code Ann. § 37-11-18 (Rev.2007). Section 37-11-18 provides, in part, that the student who is expelled shall have the constitutional right to due process, which includes the right to appeal the expulsion to the local school board. M.L.R. went through this process and was expelled for a school year after marijuana was found in her car. However, we do not review the correctness of this expulsion because, as the circuit court found, M.L.R. did not file a proper bill of exceptions allowing a review in the circuit court.
 

 ¶ 11. Appeals from school-board orders are taken in the same manner as those of appeals from judgments of the board of supervisors pursuant to Mississippi Code Annotated section 11-51-75. Miss.Code Ann. § 37-7-115. Section 11-51-75 is straightforward in how to bring an appeal to circuit court. The statute provides that any person aggrieved by a judgment of, in this case the school board, may appeal to the circuit court within ten days from the date of adjournment of the session at which the school board rendered the judgment to be appealed. The statute continues: “Any person ... may embody the facts, judgment and decision in a
 
 bill of exceptions
 
 which
 
 shall be signed by the person acting as president of the [school board].” Id.
 
 (emphasis added). When a bill of exceptions is properly prepared and is signed by the person acting as the president of the school board, then the clerk thereof is directed to transmit the bill of exceptions to the circuit court “at once.”
 
 Id.
 

 ¶ 12. As a general rule the purpose of a bill of exceptions is to afford an appellate court a history of the proceedings below. Our supreme court has held that: “The circuit court can only consider the case as made by the bill of exceptions. This is the only record before the circuit court, as an appellate court.”
 
 Stewart v. City of Pascagoula,
 
 206 So.2d 325, 328 (Miss.1968). “If the bill of exceptions is not complete and is fatally defective in that pertinent and important facts and documents are omitted therefrom, then the court does not have a record upon which it can intelligently act.”
 
 Id.
 
 Our supreme court has repeatedly held that, absent a bill of exceptions, the circuit court is not vested with subject-matter jurisdiction over the appeal.
 
 *878
 

 McIntosh v. Amacker,
 
 592 So.2d 525, 527 (Miss.1991).
 

 ¶ 13. A plain reading of section 11 — 51— 75 shows that a bill of exceptions has two requirements. The first requirement is that the bill of exceptions is to embody the facts, judgment, and decisions of the body making the determination. The second requirement is that the bill is signed by the president of that body against which the bill of exceptions is brought. It is logical that the reason for having the president sign the bill of exceptions is to ensure that the record is correct. At this point, the school board may add whatever material it deems is needed. The appellant’s duty is to prepare the bill and gain the signature of the school board president, which will be the appellee. Such a procedure ensures the documents that are in the record embody the facts, judgments, and decisions which both parties agree are necessary to be before the circuit court. Without such a signature, a bill of exception must fail as the court has no record “upon which it can intelligently act.”
 
 Stewart,
 
 206 So.2d at 328.
 

 ¶ 14. Without the signature of the president of the school board on the bill of exceptions filed by R.Y. on behalf of M.L.R., we must affirm the circuit court’s dismissal and find that M.L.R. failed to place her appeal before the circuit court. R.Y. wrote on her attempted bill of exceptions that the president of the school board would not sign the document until the school board attorney reviewed it. If this were true, and we do not say that it is, then the next action which R.Y. should have taken was to compel the school board president to sign the bill by filing a writ of mandamus.
 
 See Roach v. Tallahatchie County,
 
 78 Miss. 303, 29 So. 93, 93 (1901).
 

 ¶ 15. The circuit court exceeded its authority when it went further in its opinion and reviewed the Board’s decision to expel M.L.R. for one school year, finding there was substantial evidence supporting such a finding. This ruling of the circuit court is a nullity as the court had just previously dismissed the appeal for lack of jurisdiction for failing to meet the requirements for a correct bill of exceptions.
 

 ¶ 16. Therefore, we affirm the decision of the Circuit Court of Pontotoc County to dismiss the bill of exceptions after finding that it lacked jurisdiction to hear the appeal.
 

 ¶ 17. THE JUDGMENT OF THE CIRCUIT COURT OF PONTOTOC COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR. BARNES, J., NOT PARTICIPATING.
 

 [1]
 

 . Initials are used to protect the identity of the minor and her mother.
 

 [2]
 

 . Later that day, she took a drug screen at her own expense and passed.
 

 [3]
 

 . Miss.Code Ann. section 37-11-18 (Rev. 2007).