BARNES, J.,
for the Court:
¶ 1. Scott Leavitt, Gregory Applewhite, and James Holiday (Appellants) are inmates at the East Mississippi Correctional Facility (EMCF) in Meridian, Mississippi. After another inmate, Robert Marsh, told EMCF’s mental-health counselor that the Appellants were trading their canteen items for his meal trays, the counselor issued a rule violation report (RVR) for each Appellant, and they were given, a disciplinary hearing. According to the Appellants, the disciplinary hearing officer found them “guilty” of the rule violation without affording them a chance to present evidence or witnesses. The Appellants subsequently filed a complaint with the Lauderdale County Circuit Court, alleging that the actions of the prison employees were malicious and violated their right to due process. The circuit judge dismissed the complaint as frivolous, and the Appellants now appeal. Finding no reversible error, we affirm the circuit court’s dismissal.
SUMMARY OF FACTS AND PROCEDURAL HISTORY
¶ 2. This appeal originated in 2009 when Marsh complained to the prison’s mental health counselor, ShNesha Carter, that the Appellants were trading their canteen items in exchange for his meal trays. Carter submitted RVRs for the Appellants, alleging that they had violated Rule B20 in the Mississippi Department of Corrections’ (MDOC) handbook: “Engaging in extortion or blackmail, bribery, loan sharking, collecting or incurring debt.”
¶ 3. According to the Appellants, when they were brought for a hearing on the alleged violations, EMCF’s disciplinary hearing officer, Kino Reese, had already marked on their respective RVRs that they were “guilty,” and he merely asked them to sign the document acknowledging their guilt. Although each Appellant claims that he filed an appeal of the decision through the MDOC’s Administrative Remedy Program (ARP), only Leavitt re: ceived a response. The response, which Leavitt received on September 24, 2009, stated that there was no evidence to overturn the officer’s decision.[1] Leavitt filed a second and third request for review of the RVR hearing, both of which were denied. On March 8, 2010, Leavitt received a letter from the ARP administrator confirming that he had fulfilled the requirements of the ARP and was eligible to seek judicial review within thirty days.
*337 ¶ 4. The Appellants each filed a motion to appoint counsel and a motion to proceed in forma pauperis on April 2, 2010. Then, on May 20, 2010, the Appellants filed a complaint with the Lauderdale County Circuit Court against Cartér, Officer Reese, and Dale Caskey, EMCF’s warden (Appellees). Although the complaint was not filed within thirty days after Leavitt completed the ARP, the circuit court entered an order to file a new case on May 20, 2010.[2] Thus, the circuit court gave the Appellants leave to file their untimely complaint, which alleged that the Appellants were not afforded due process and that Officer Reese and Garter acted with malicious intent. The complaint also alleged negligence on the part of Warden Caskey. The Appellants requested declaratory relief, injunctive relief, nominal damages,' compensatory damages, and punitive damages.
¶ 5. The circuit court entered an order of dismissal with prejudice on July 20, 2010, finding that the Appellants’ complaint “fail[ed] to present any sound basis in fact or law,” and, moreover, “would have not chance of success” under the Mississippi Tort Claims Act (MTCA). On appeal, we affirm the circuit court’s dismissal as to Applewhite’s and Holiday’s claims, as they failed to exhaust their administrative remedies. Further, while- we find merit to Leavitt’s- claim that immunity under the MTCA is not applicable in this case, Leav-itt has failed to provide any facts that would warrant relief, and his claims have no realistic chance of success. Accordingly, we affirm the circuit court’s dismissal of the complaint.
I. Whether the Appellants have exhausted their administrative remedies.
¶ 6. There is no dispute that, to the extent that the Appellánts seek-á'vacation of the RVRs, their complaint constitutes an appeal from an administrative decision by an agency.- “We will not disturb the decision of an administrative agency, such as the-MDOC, unless the decision "is ‘unsupported by substantial evidence, 'arbitrary or capricious, beyond the agency’s scope or powers, or violative of'the constitutional or- statutory rights of the aggrieved party.’” Taylor v. Petrie, 41 So.3d 724, 727 (¶8) (Miss.Ct.App.2010) (citing Edwards v. Booker, 796 So.2d 991, 994 (¶ 10) (Miss.2001)).
¶ 7. It is well settled' that “[a]n inmate must exhaust all of his internal remedies with the MDOC before seeking judicial review of any complaint.” Id. at 727-28 (¶ 12) (citing Edwards, 796 So.2d at 996 (¶¶ 22-23)). If the offender is aggrieved by the. agency’s-, final decision after., the administrative .process is complete, he may seek judicial, review of the. decision within thirty days of receipt. Miss,Code Ann. § 47-5-807 (Rev.2011).
¶ 8. The Appellees assert that Ap-plewhite and Holiday failed to exhaust their administrative remedies, and we agree. Applewhite and Holiday claim in their respective “affidavits” that although they filed a grievance through the ARP at the end of August. 2009, they never received an answer. While the .MDOC’s grievance procedures entitle a prisoner who receives no response to “automatically advance to the next grievance level,” there is nothing in the record to show that either inmate completed the ARP and exhausted his administrative remedies. Thus, this Court is without jurisdiction to consider these claims. See McKenzie v. State, 66 So.3d 1274, 1276 (¶ 2). (Miss.Ct.App.2011).
¶ 9. Leavitt filed a grievance through the ARP and received his first-fetép response *338 on September, .24, 2009. He repeived his second response on Optober 8, 2009. Leavitt submitted-a third request for relief and received his third-step response form on February 22, 2010. A certifícate stating that Leavitt had fulfilled the requirements of the ARP was signed and received by him on March 8, 2010. Although Leav-itt’s third-step response was not received until February 22, 2010, the MDOC’s Administrative Review Board granted permission for Leavitt to pursue judicial review.
¶ 10; Leavitt filed a motion to appoint counsel and- motion to proceed in forma pauperis on April 2, 2010. As already noted, the complaint was not filed until May 20, 2010, which typically would require the complaint to be dismissed as untimely. However, the circuit court gave Leavitt leave to file the complaint. Accordingly, we find that Leavitt exhausted his administrative remedies and was eligible to seek judicial review of his claim. Any remaining issues addressed by this Court will solely concern Leavitt’s claims.
II. Whether the circuit court erred in dismissing the complaint as frivolous.
¶11. “Our trial courts possess an inherent authority to dismiss frivolous complaints, sua sponte, even prior to service of process on the defendants.” Duncan v. Johnson, 14 So.3d 760, 762 (¶ 4) (Miss.Ct.App,2009). We review such action by the court for abuse of discretion, considering “(1) whether the complaint has a realistic chance of success; (2) whether it presented an arguably sound basis in fact and law; and (3) whether the complainant could prove any set of facts'.that would warrant relief.” Id. at 763 (¶ 5) (citing Dock v. State, 802 So.2d 1051, 1056 (¶ 11) (Miss.2001)).
¶ 12. Leavitt alleges that- the circuit court erred by dismissing the complaint without pei’forming a judicial .review.. In Edwards, 796 So.2d at 998 (¶ 36), the supreme court stated: “The right to judicial review of final decisions of the classification committee is conferred by statute.” However, the circuit judge in Edwards dismissed for lack of jurisdiction. As we have already observed, the'circuit court had jurisdiction to consider Leavitt’s appeal of his RVR. This Court has held: “Circuit’courts may dismiss actions without' a hearing when it is clear from the record that the prisoner is not entitled to any relief.” Clay v. Epps, 19 So.3d 743, 746 (¶ 8) (Miss.Ct.App.2008). While the court’s order of dismissal does not make any specific findings — merely stating the complaint is without a “sound basis in law” — it did not dismiss for lack of jurisdiction. Therefore, we find nothing to indicate that the circuit court did not consider the Appellants’ complaint and conduct an appropriate judicial review.
A. Dismissal under the MTCA .
¶ 13. In its order of dismissal, the circuit court alternatively reasoned that the Appellants’ complaint would not be successful because the Appellees had immunity from liability under the MTCA. Mississippi Code Annotated section 11-46-9(l)(m) (Rev.2002) states that “[a] governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim” arising while an inmate was incarcerated. Leavitt, however, argues that the MTCA is not applicable since EMCF is managed by a private entity, Geo Group Inc.
¶ 14. The MTCA defines an “employee” as:
[A]ny officer, employee or servant of the State of Mississippi or a political subdivision. of the state, including elected or *339 appointed officials and persons acting on .behalf of the state or a political subdivision in any official capacity, temporarily or permanently, in.the service of the state or a political subdivision whether .with or without compensation.
Miss.Code Ann.. §. 11-46-1 (Rev.2002). However, Mississippi Code Annotated section 47 — 5—1219(b) (Rev.2011), which addresses prerequisites for contracts for correctional facilities, clearly states: “The sovereign immunity of the state shall not apply to the contractor. Neither the contractor nor the insurer of the contractor may plead the defense of sovereign immunity in any action arising out of the performance of the contract.” The Appellees have failed to address or defend the issue of immunity under the MTCA on appeal and did not assert this as a defense to the circuit court. Further, the Appellees admitted in their supplemental brief that EMCF was a private prison “operated by a corporation and not the MDOC” and “did not plead the defense of sovereign immunity[.f
¶15. We find that the immunity conferred under the MTCA does not apply to private prisons operated under a contract with the State; thus, Geo Group Inc. and its employees are not eligible for immunity under the MTCA,[3] Accordingly, the circuit court erred in finding that the Appellees were immune under the MTCA, and our review now focuses solely on whether Leavitt’s complaint failed to present a “sound basis in fact and law.”
5, Constitutional Due Process Claim
¶ 16. Leavitt claims that Officer Reese marked'him “guilty” on his RVR before the hearing began. Leavitt alleges: that because Officer Reese did not- give him an opportunity to present evidence or witnesses at his RVR hearing, he was not afforded due process under the Fourteenth Amendment of the United States Constitution.
¶ 17. “A due process violation occurs where a party is not, allowed a full and complete hearing before being deprived of life, . liberty or property.” Vaughn v. Vaughn, 56 So.3d 1283, 1287 (¶13) (Miss.Ct.App.2011) .(quoting Stuart v. Stuart, 956 So.2d 295, 300 (¶ 23) (Miss.Ct.App.2006)). Thus, “[t]he initial requirement for either a procedural or substantive due process claim is proving that the plaintiff has been deprived by the government of a liberty or property interest; otherwise, ‘no right to due process can accrue.’ ” Suddith v. Univ. of S. Miss., 977 So.2d 1158, 1170 (¶ 19) (Miss.Ct.App.2007) (quoting Pruett v. Dumas, 914 F.Supp. 133, 137 (N.D.Miss.1996)).
¶ 18. The Mississippi Supreme Court has recognized that an inmate is entitled to certain due process rights when “subjected to disciplinary measures for misconduct.” Terrell v. State, 573 So.2d 730, 731 (Miss.1990). These rights include the following:
24 hours’ advance written notice of the charges against them; a right to call 'witnesses cmd presmd documentary evidence in defense, unless doing so would jeopardize institutional safety or correctional goals; the aid of a staff member or inmate in presenting a defense, pro *340 vided the inmate is illiterate or the issues complex; on impartial tribunal; and a written statement of reasons relied on by the-tribunal.
Id. (citation omitted and emphasis added). The MDOC’s disciplinary procedures manual (Rev.2009) also states: “Written policy, procedure, and practice provide that inmates have an opportunity to make a statement and present documentary evidence at the hearing and can request witnesses on their behalf[.]” In the ARP’s third-step response form provided to Leav-itt, the MDOC replied: “You were afforded the opportunity to testify at a Disciplinary Hearing and to call witnesses to testify in your behalf. All due process of law requirement's were met and all applicable policies and procedures were followed.”
¶ 19. However, “the Due Process Clause does not protect every change in the conditions of confinement which has a substantial adverse effect upon a prisoner.” Madison v. Parker, 104 F.3d 765, 767 (5th Cir.1997) (citation omitted). As a result of the RVR,_ Leavitt lost phone, visitation, and, canteen privileges for one month. In Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the United States Supreme Court recognized that while states may “create liberty interests which are protected by the Due Process Clause,” these interests:
will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, ... nonetheless imposes atypical and significant hardship on the inmate in relation to the■ ordinary incidents of prison life. ■■
(Internal citations omitted and emphasis added). Although the MDOC’s policies state that a prisoner is entitled to certain rights at a disciplinary hearing, we must look to the nature of the interest, not the regulation itself, to see whether a liberty interest is created.
After Sandin, it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves “in relation to the ordinary incidents of prison life.”
Wilkinson v. Austin, 545 U.S. 209, 223, 125 S.Ct. 2384, 162 L.Ed.2d,174 (2005) (quoting Sandin, 515 U.S. at 484, 115 S.Ct. 2293). While states may create liberty interests protected by the Due Process Clause, “these interests are generally limited to state created -regulations or statutes which affect the quantity of time rather than the quality of time served by a prisoner.” Madison, 104 F.3d at 767.
¶ 20. “Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law.” Sandin, 515 U.S. at 485, 115 S.Ct. 2293. Generally, a disciplinary or administrative sanction will not be considered to be an “atypical and significant hardship,” as defined by Sandin, unless it is determined to be “onerous.” Jenkins v. Haubert, 179 F.3d 19, 28 (2nd Cir.1999). “[T]o hold ... that any substantial deprivation imposed by prison authorities triggers the procedural protections of the Due Process Clause would subject to judicial review a wide spectrum of discretionary actions that traditionally have been the business of prison administrators[.]” Meachum v. Fano, 427 U.S. 215, 225, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976).
¶ 21. In Terrell, 573 So.2d at 732, the Mississippi Supreme Court held that “[p]rison officials have the discretion to *341 determine whether and when to provide prisoners with privileges which amount to more than reasonably adequate food, clothing, shelter, sanitation, medical care, and personal safety.” (Citation omitted). For example, “[visitation rights of the. inmates are accorded at the discretion of prison officials[,] and denial of such is not a constitutional issue.”, Id. (citing McCray v. Sullivan, 509 F.2d 1332, 1334 (5th Cir.1975)). “Likewise, claims by inmates regarding radio and television privileges ‘do not pertain to federal' constitutional rights.’ ” Id. (citation omitted).
¶ 22. The loss of phone privileges is also not generally considered to be a constitutionally protected liberty interest. In a case somewhat similar to the present one, ' Tanney v. Boles, 400 F.Supp.2d 1027, 1040 (E.D.Mich.2005), the Michigan district court considered an inmate’s claim that his. “due process rights were violated because a telephone restriction was imposed upon him for violation of a non-existent cell phone rule, and because Defendant failed to give him a hearing on the alleged violation in accordance with [Michigan Department of Corrections] Policy[.]” The district court concluded:
The fact that Plaintiffs phone privileges were temporarily restricted does not implicate a constitutional or statutory right. While inmates have a First Amendment right to communicate with family and friends, they do not have a constitutional or statutory right ,to unlimited or unrestricted telephone access. Washington v. Reno, 35 F.3d 1093, 1100 (6th Cir.1994); Niece v. Fitzner (“Niece 7”), 922 F.Supp. 1208, 1218 n. 8 (E.D.Mich.1996). Plaintiffs ¡claim that the • restriction was imposed based on false, charges does not elevate his claim to a constitutional level.
Tanney, 400 F.Supp.2d at 1040-41; see also Jones v. McDaniel, 552 F.Supp.2d 1141, 1146 (D.Nev.2008) (“[L]oss of phone and canteen privileges” is not considered to be a liberty interest protected by the Due Process Clause.); Husbands v. McClellan, 990 F.Supp. 214, 217 (W.D.N.Y.1998) (The temporary loss of phone privileges “does not represent the type of deprivation which could reasonably be viewed as imposing an atypical and significant hardship on an inmate.” (citation omitted)). Accordingly, we find that Leavitt’s temporary restriction of phone, visitation, and canteen privileges was not sufficient to trigger any constitutional due process concerns.
¶ 23. Leavitt also argues that the hearing violated his right to due process since his RVR could result in an unfavorable parole decision. However, the Mississippi Supreme Court has stated:
[The] maintenance of a parole system does not, in and of itself, create a protected interest in parole[;] one exists only where mandatory language creates a presumption of entitlement to parole once certain objective criteria are met. However, because the Mississippi parole statutes contain no such mandatory language, employing the permissive “may” rather than “shall,” prisoners have “no constitutionally recognized liberty interest” in parole. ■
Vice v. State, 679 So.2d 205, 208 (Miss.1996) (citations omitted and emphasis added); see also Madison, 104 F.3d at 768 (stating there is no constitutional expectancy of parole). Consequently, the mere possibility that Leavitt’s RVR might negatively affect any future parole decision is not a, protected liberty interest under the Due Process Clause.
¶ 24. Leavitt noted in his affidavit that “the claim was only borderline federal 1983 action actionable.” The Appellants’ reply brief states:
*342 The [Appellants] assert that up to this point in the instant case[,] the [Appellants’] complaint has not been considered by the courts under § 1983.... Should the courts find that a constitutional violation did occur, at that point, the [Appellants] believe that jurisprudence would probably consider the constitutional violation to be of more weight than the state law torts and common law torts, and at that point, would--rule, under 42 U.S.C. § 1983 and federal law and rules would apply.,. Until that time, the [Appellants] assert that 42 U.S.C. § 1983 and the federal cases cited by the [Appellees] have no bearing on the instant case.
Since Leavitt’s loss' of privileges do not constitute a constitutional violation of procedural due process, there exists no viable claim under section 1983. See West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) (for a plaintiff to have a viable claim under section 1983, he “must allege the violation of a right secured by the Constitution^]”).
C. Statutory Due Process Claim
¶ 25. - In Edwards, 796 So.2d at 995 (¶ 19), the Mississippi Supreme Court stated: “Absent the infringement of a significant constitutional right, there can be no deprivation of constitutional due process. However, , Mississippi], Code Anh[otated sections] 47-5-801 to 47-5-807 (1999), authorizes MDOC to adopt its administrative review procedures and creates a statutory scheme of due process.” MDOC’s disciplinary procedures manual states that, at a disciplinary hearing, “[t]he Hearing Officer will hear all pertinent information surrounding ah alleged rulé violation.” The manual further notes that inmates must be provided “an opportunity to make a statement and present documentary evidence at the hearing and can request witnesses on their behalf[.]”
■ ¶ 26. In Edwards, Vincent Edwards was removed from house arrest and placed in-the -general prison population after being ruled guilty of an RVR violation in a disciplinary hearing. The circuit court dismissed his appeal, finding it had no jurisdiction because there was no violation of due' process. Edwards, 796 So.2d at 993 (¶8). The Mississippi Supreme Court held:
If the disciplinary committee refuses to follow its own administrative review procedures, then its decision is by definition arbitrary and capricious. The disciplinary committee acted arbitrarily in refusing to allow Edwards to present witnesses and evidence" in violation of its own administrative review procedures.
Id. at -995-996 (¶ 13). It reversed and remanded the case to the circuit court for a factual determination of whether the prisoner had “violated the terms of the Intensive Supervision Program.”
¶ 27. Leavitt cites Hodges v. Scully, 141 A.D.2d 729, 529 N.Y.S.2d 832 (N.Y.App.Div.1988), to support his claim that Officer Reese’s action — marking him “guilty” without , a meaningful opportunity to present evidence — was an actionable violation of MDOC policy. In Hodges, the New York court considered a similar situation, in which a prisoner observed that the hearing officer had a completed and “signed determination of the [prisoner’s] guilt and the punishment to be imposed.” Id. at 730, 529 N.Y.S.2d 832. The officer acknowledged the document but claimed he could revise his decision based on any evidence produced at the hearing. The court concluded that “[s]uch a predetermination of the petitioner’s guilt, prior to the conclusion of the hearing and the introduction of all the evidence was a patent violation of the petitioner’s rights and the regu *343 lations of the New York State Department of Correctional Services.” Id.
¶28. We find both Hodges and Edwards are distinguishable from the present case. In Hodges, the prisoner had requested evidence to be presented at his hearing, but his request was denied. Similarly, in Edwards, the prisoner asked for his attorney to be present and to be allowed to present evidence, but the MDOC denied the request and did not. give Edward’s attorney notice . of the heading. Here, Leavitt simply claims that he “intended to depose or call as witnesses at least two of the other inmates that had hearings on this issue that day.” (Emphasis added). There is nothing in the record here to indicate Leavitt actually requested the presence of witnesses or asked to present evidence prior to his disciplinary hearing.
¶ 29. Moreover, Leavitt admits that he traded items with Marsh; he merely attempts to argue his actions were not a violation of Rule B20, which forbids an inmate from “[e]ngaging in extortion or blackmail, bribery, loan sharking, collecting or incurring debt.” Although the complaint claims that Leavitt never asked Marsh “to buy or trade anything,” and that Marsh harassed Leavitt to buy or trade canteen items with him, Leavitt admits he gave Marsh canteen, items such as “cigarettes, cigarette butts, or other items[.]” The complaint also ■ states: “There were far more things given to Robert Marsh than traded or sold,” implying that there were'items that‘were traded. Furthermore, Leavitt admitted in his affidavit to the-circuit court: “[Carter] knew it was a simple trade, not extortion, blackmail, or loan sharking[.]” (Emphasis added). Leavitt appears to have overlooked the portion Of Rule B20 that considérs “collecting or incurring debt” to be a rule violation. . The MDOC, as the governing agency, has the authority to view the act of trading items with , another inmate as the “collecting or incurring [of] debt” contemplated in Rule B20. Furthermore, this type of behavior (collecting and incurring debt) has the potential to result in extortion, blackmail, and loan sharking.
¶ 30. Leavitt never requested, prior to the hearing, that witnesses or evidence be presented to ‘réfuté the RVR. Even if there was'a statutory due process-violation as alleged by Leavitt, the appropriate remedy would be to remand to the circuit court for further factual determinations. See Edwards, 796 So.2d at 998 (¶ 34). Unlike Edwards, howéver, Leavitt has admitted to actions that warranted the MDOC’s finding that he violated Rulé B20 by trading items with Marsh, thereby collecting and incurring debt. Thus; remanding to the circuit court for further review would serve no purpose and would be' judicially inefficient. Consequently, we find Leav-itt’s claim has no “realistic chance of success.”'
D. Tort Claims
¶ 31. Leavitt asserts that Carter “falsely and maliciously charged the [Appellants] with rule violations, without corroborating evidence.” Leavitt, states that Carter “clearly knew ... that the alleged actions of the [Appellants did] not ’ describe or support the charges” :and argues that what Marsh accused him of was only collecting or incurring debt. As already discussed, Leavitt does not deny that he gave Marsh the canteen items, and has admitted to actions that constituted a rule violation. Therefore, we find .nothing to support Leavitt’s claim that Carter’s, filing of the RVR constituted a malicious action.
¶32. We also find no-claim..exists against Warden Caskey. He did not participate in the RVR hearing; he merely reviewed Leavitt’s ARP request. As this Court noted in a recent case, prison offi *344 cials operating in a supervisory capacity are not liable to an inmate for the actions of state' prison personnel. Clincy v. Atwood, 65 So.3d 327, 333 (¶18) (Miss.Ct.App.2011).
¶ 33, Leavitt claims that Officer Reese was negligent in failing to conduct a proper hearing and that he caused Leavitt “emotional distress and mental anguish.” Leavitt submits that as a result of the disciplinary action, he suffered chest pain and nausea, and his physical pain caused depression and suicidal thoughts. “A plaintiff must offer ‘substantial proof of emotional harm, and the emotional injuries must be reasonably foreseeable from the defendant’s actions.” Evans v. Miss. Dept of Human Servs., 36 So.3d 463, 476 (¶ 53) (Miss.Ct.App.2010) (citation omitted). Leavitt has not provided any “substantial proof’ that he suffered demonstrable -injury or harm resulting from the alleged actions by Officer Reese. See Hudson v. Palmer, 977 So.2d 369, 384 (¶ 45) (Miss.Ct.App.2007) (“[A] plaintiff seeking emotional damages as a result of ordinary negligence must show some resulting demonstrable harm.”). Moreover, Leavitt admits that he had suffered from depression prior to the hearing.
¶34. Consequently, we find Leavitt’s tort claims failed to prove any facts that “would warrant relief’ and had no “realistic chance of success.”
E. Damages
¶ 35. Wé have found no viable claim to survive disniissal that would warrant compensatory or punitive damages. Additionally, we conclude that Leavitt’s claim for injunctive relief was properly dismissed by the circuit court.[4]
CONCLUSION
¶ 36. Although the circuit court erred in dismissing the complaint on the alternative basis of immunity under the MTCA, we agree with the finding that the Appellants failed to submit any facts to support a viable claim, and affirm the dismissal of the complaint.
¶ 37. THE JUDGMENT OF THE LAUDERDÁLE COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, CARLTON, MAXWELL AND FAIR, JJ., CONCUR. RUSSELL, J„ CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION. '

. The only evidence that Applewhite and Holiday appealed through the ARP was their statements contained in their respective affidavits that they did so. We also note that Holiday’s purported affidavit was unsworn.

. See Miss.Code Ann. § 47-5-807 (Rev.2011).

. We requested supplemental briefing from the parties on several issues, one of which was the Appellants’ failure to name the MDOC as a defendant since the complaint was an appeal from an administrative agency. Both parties agreed that the MDOC was not a necessary party to the actions. Furthermore, this Court has addressed the merits' of prior cases concerning an appeal from the ARP, although the MDOC was not included as a party. See Taylor v. Sparkman, 77 So.3d 1133 (Miss.Ct.App.2011); Clincy v. Atwood, 65 So.3d 327 (Miss.Ct.App,2011).

. In his complaint, Leavitt requested Warden Caskey to "expunge” his disciplinary violations and review cases that Officer Reese “has 'presided ■ over,” correcting "any injustices' done to those inmates[.]” He. also asked for a "preliminary and permanent injunction ordering the [Appellees] to refrain from any type of retaliation against the [Appellants.]”'