# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-KM-00450-COA

**LEON LAKENDRICK SEALS A/K/A LEON L. SEALS A/K/A LEON SEALS**                    APPELLANT

v.

**STATE OF MISSISSIPPI**                    APPELLEE

DATE OF JUDGMENT:              03/07/2024
TRIAL JUDGE:                  HON. STEVE S. RATCLIFF III
COURT FROM WHICH APPEALED:    RANKIN COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:       URSULA KATRINA MITCHELL
ATTORNEY FOR APPELLEE:        BRENDAN CLARK SARTIN
DISTRICT ATTORNEY:            JOHN BRAMLETT JR.
NATURE OF THE CASE:           CRIMINAL - MISDEMEANOR
DISPOSITION:                  AFFIRMED - 10/28/2025
MOTION FOR REHEARING FILED:

**BEFORE CARLTON, P.J., McDONALD AND McCARTY, JJ.**

**CARLTON, P.J., FOR THE COURT:**

¶1.     The Municipal Court of the City of Pearl, Mississippi, found Leon Lakendrick Seals guilty of violating City nuisance ordinances concerning "unsightly conditions" existing on Seals's property located within the City limits.[1]  Seals appealed to the County Court of Rankin County, and after a de novo bench trial, the county court found Seals guilty of violating multiple City nuisance ordinances[2] concerning "unsightly conditions" and ordered

---

[1] Pearl Code, Ch. 24, §§ 24-1 through 24-77 (June 30, 2021) (as amended Mar. 14, 2022).

[2] *See* Pearl Code, Ch. 24, §§ 24-3(c)(1), (c)(7), (c)(8), (c)(9), (c)(10), (c)(11) & (c)(13).

Seals to pay a $1,000 fine and serve a six-month sentence in the Rankin County jail, subject to certain conditions set forth in the county court's order. Seals appealed to the Rankin County Circuit Court, which affirmed Seals's conviction and sentence.

¶2. Seals appeals, asserting that (1) he was denied due process when the City allegedly failed to provide him with proper notice of the unsightly conditions on his property or an opportunity to remedy them; and (2) his "unsightly conditions" conviction was not supported by substantial evidence.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶3. After the Pearl Municipal Court found Seals guilty of violating City nuisance ordinances concerning "unsightly conditions" existing on Seals's property located at 355 South Sweet Home Church Road in Pearl,[3] Seals appealed to the County Court of Rankin County.[4]

¶4. On July 26, 2023, the county court conducted a de novo bench trial on Seals's charges for the unsightly conditions. Seals, represented by counsel, appeared at the trial and, through counsel, actively participated in the trial. Officer Brian Ellis of the Pearl Police Department testified for the City. Seals and his wife, Morgan Seals, testified in Seals's behalf. At the close of Seals's case, the City recalled Officer Ellis as a rebuttal witness.

¶5. Officer Ellis testified that on July 14, 2022, he went to Seals's home located at 355

---

[3] There is no transcript of the proceedings before the municipal court, which is not a court of record. *See* Miss. Code Ann. § 21-23-7 (Rev. 2015 & Supp. 2022).

[4] Mississippi Rule of Criminal Procedure 29.1 establishes that a direct appeal from municipal court shall be "for a trial *de novo*." MRCrP 29.1; *see Caissie v. State*, 254 So. 3d 849, 852 (¶5) (Miss. Ct. App. 2018).

South Sweet Home Church Road to inspect the property and issue a citation if he found that unsightly conditions in violation of the City nuisance ordinances existed, as follows:

> I was tasked with—we had a complaint to go out to the property, tag the property, to speak with the owner . . . about the property. Mr. Seals received several complaints from his neighbors about his property. His property was initially tagged for cleanup[—]we give a [fourteen]-day notice [and during] this period, it was not done. So on [July 14, 2022], I was sent out to . . . inspect the yard and write the citation. The yard had not been cleaned up.

¶6.    Officer Ellis testified that there were "multiple violations" on Seals's property on July 14. He testified in detail about the numerous conditions he observed on Seals's property that violated Pearl Code, Chapter 24, sections 24-3(c)(1), (7), (8), (10), (11), and (13) of the City's Code of Ordinances and described twenty-six photographs that he took that day. The photographs were admitted into evidence.

¶7.    Regarding his interactions with Seals before July 14, Officer Ellis testified that for at least six months prior to July 14, he and Seals "had met several times at [Seals's] property" and had "numerous conversations" about what needed to be done to get Seals's property into compliance with the City's ordinances. Also, prior to July 14, Officer Ellis and Seals walked Seals's property, and Officer Ellis placed red stickers on some inoperable vehicles on the property. The stickers warned the owner (Seals) that if the vehicles were not removed within fifteen days, the City would tow them. Other than placing the red stickers on a few of Seals's vehicles, as described above, Officer Ellis did not provide any other written notice to Seals prior to July 14, 2022.[5]

---

[5] During Officer Ellis's cross-examination, Seals's counsel showed him a "door hanger" dated June 1, 2022, that had been issued to Seals for unsightly conditions on property identified by the address "112 Holmes Avenue," which is the lot adjacent to the 355

3

¶8.    Officer Ellis issued the July 14, 2022 citation to "Leon Seals" at "355 Sweet Home" in Pearl, Mississippi, at "1400" hours.  Officer Ellis completed the "offense" portion of the citation as follows: "11-2[6] [of the City's Code of Ordinances]—unsightly conditions." The citation commanded Seals to appear in Pearl Municipal Court on July 28, 2022 at 8:00 a.m. and further provided that

> IN LIEU OF CUSTODIAL ARREST, I ACCEPT THIS SUMMONS TO APPEAR IN SAID COURT [at the date time and place indicated] . . . . IF YOU FAIL TO APPEAR AT THAT TIME A WARRANT FOR YOUR ARREST WILL BE ISSUED.

_____
DEFENDANT'S SIGNATURE

On "DEFENDANT'S SIGNATURE" line, Officer Ellis had written "X REFUSED TO SIGN." *Id.*  The July 14, 2022 citation was admitted into evidence.

¶9.    Officer Ellis testified that while he was issuing the citation, he asked Seals for his Social Security number to complete the paperwork.  Seals gave it to him, but he said the numbers so quickly that Officer Ellis "could not retain the information"; so he asked Seals to repeat it.  Seals told him that he had already given it to him.  Officer Ellis also testified that

South Sweet Home Church Road address.  A "door hanger" is a printed notice left at a property to inform the owner of code violations.  After looking at the June 1, 2022 door hanger, Officer Ellis testified that he had "no knowledge of 112 Holmes Avenue," he was not the officer who signed that door hanger, and he did not know which officer was identified by "S-6," which was the officer information written on the June 1, 2022 door hanger.  The June 1, 2022 door hanger concerning the 112 Holmes Avenue property was not admitted into evidence.

    [6] The Code of Ordinances of the City of Pearl, Mississippi, was recodified in 2020. In relevant part, Section 11-2 was recodified and placed within Chapter 24-NUISANCES, sections 24-1 through 24-77.

4

Seals refused to sign the citation summons acknowledging that he accepted the summons to appear in municipal court at 8:00 a.m. on July 28, 2022.

¶10.    Officer Ellis then called for backup, another officer arrived at the scene, and, according to Officer Ellis, that officer arrested Seals "for failure to give the information" needed to complete the citation.[7]  Officer Ellis testified that Seals was taken to the Pearl police station, but rather than jailing Seals for failing to cooperate, the police called Seals's wife, who came and picked up Seals from the police station.  Officer Ellis testified that Seals "was released on the citation" requiring him to appear in Pearl Municipal Court on July 28, 2022.

¶11.    Later that afternoon, Officer Ellis left a "City of Pearl Community Development Unsightly Conditions Section 11-2" door hanger for "355 Sweet Home" with Mrs. Seals.  Officer Ellis signed and completed the door hanger, checking numerous boxes indicating "unsightly conditions" in the yard.  To avoid repetition, we list these conditions in more detail below.  The July 14, 2022 door hanger was admitted into evidence.  During his redirect examination, Officer Ellis confirmed that he returned to Seals's property at 355 South Sweet Home Church Road on July 28, 2022, and Seals had not remedied the situation.

¶12.    The City rested.

¶13.    Seals testified on his own behalf.  Seals testified that at least fourteen days before July 1, 2022, Officer Ellis came to his home located at 355 South Sweet Home Church Road and

---

[7] The Pearl Police Department Incident Report concerning this incident provides, however, that Seals was placed "IN CUST FOR UNSIGHTLY CONDITIONS" and describes the offense as "11-2 VIOLATION CITY ORD. UNSIGHTLY COND."

told Seals he had fourteen days to move a van that was on tree stumps in his yard. Officer Ellis put a red sticker on the van and then left. Seals initially testified that he did not recall Officer Ellis ever coming to his home before that time, but later, during his redirect examination, Seals acknowledged that Officer Ellis had been out to his home several times and that at some point, red stickers were placed on some vehicles that needed to be cleaned up and removed. Seals also testified that at some point before July 14, "my kids received a door hanger . . . but it was for 112 Holmes Avenue, which the Pearl Police Department [said] . . . we've got to go to Court to determine who the property belongs to."

¶14. Seals testified that when Officer Ellis returned to Seals's home on July 14, 2022, Seals showed him that the van was running, but then Officer Ellis "went on . . . about some tires located behind [Seals's] house." According to Seals, Officer Ellis never told him "anything about the tires" before that day. Officer Ellis then told him that "he's got to write [me] a citation," so Seals went to get his driver's license. According to Seals, when Officer Ellis asked Seals for his Social Security number, Seals gave it to him, but he would not repeat it because Seals's "identity had been stolen" in the past. Seals testified, "[Officer Ellis then] called backup and had someone come arrest me."

¶15. Seals was taken to the Pearl police station. It was Seals's understanding that he was being arrested for "unsightly condition and not providing proof of my social security number." Seals testified that at the police station, he refused to sign anything [i.e., the citation summons]. An officer then told him, "Well, I'm not going to take you to jail for being ignorant"; so the police called Seals's wife, and she came and picked him up.

6

¶16. Seals testified that later that day Officer Ellis came back and gave his wife, Morgan, a door hanger and "told her [he (Seals)] had [fourteen] days to get whatever else cleaned up," which were all the things listed on the door hanger. As addressed in further detail below, Seals testified that he took care of the items listed on the door hanger. According to Seals, when Officer Ellis visited his home again on July 28, he told Seals that "everything looked good."

¶17. Morgan also testified about receiving the 112 Holmes Avenue door hanger. She and Seals were not home at the time, but she said that the door hanger was left with her children, "[a]nd that was the first . . . situation we had with the City." According to Morgan, she and Seals "own the parcel that it [the home located at 112 Holmes Avenue] sits on." To her knowledge, Seals tried to comply with that door hanger.

¶18. Regarding their home located at 355 South Sweet Home Church Road, Morgan testified that she recalled Seals telling her that Officer Ellis had been to their home and "placed stickers on the van and [told Seals] [h]e had to get the van running." When Officer Ellis came back on July 14, the van was running. Morgan testified that she filmed Seals's and Officer Ellis's interaction on July 14. According to Morgan, Seals gave Officer Ellis his Social Security number twice, and then they exchanged words with each other. Officer Ellis called another officer for backup, who arrived and placed Seals under arrest. When Morgan asked that officer why Seals was under arrest, he told her that it was "because [Seals] did not give his social security number." Seals was then taken to the police station.

¶19. Morgan corroborated Officer Ellis's testimony that he gave her the 355 South Sweet

7

Home Church Road door hanger later that same day (July 14, 2022). As we address in more detail below, Morgan testified that she and Seals tried to get into compliance by clearing the property and building a fence.

¶20. Seals showed no photographs of his property as it existed on July 14, 2022, or July 28, 2022.

¶21. The defense rested its case.

¶22. The City re-called Officer Ellis as a rebuttal witness to testify about what he observed on Seals's property on July 28, 2022, in response to the Sealses' testimony that the property had been remediated. Officer Ellis presented photographs stamped with the date "July 28, 2022," the time, and the GPS location of each photograph (the 355 South Sweet Home Church Road location).[8] As we detail below, Officer Ellis testified about each photograph, describing numerous unsightly conditions that still existed on Seals's property.

¶23. The City finally rested.

¶24. Following closing arguments,[9] the county court judge issued a bench ruling, specifically finding that the evidence showed "beyond a reasonable doubt" that Seals was guilty of violating sections 24-3(c)(1), (7), (8), (9), (10), (11), and (13) of Chapter 24 of the City's Code. The county court's "Judgment of Conviction and Sentence Instanter" was

---

[8] The July 28, 2022 photographs were not admitted into evidence.

[9] Seals's counsel argued in closing that Seals was not provided with due process because (1) he was arrested for unsightly conditions existing on his property on July 14, 2022, but had not been notified until that day (via the July 14, 2022 door hanger) of the specific conditions that were in violation of City nuisance ordinances; and (2) Seals was not given an opportunity to cure those conditions prior to his arrest on July 14.

entered on July 26, 2023. The county court found Seals guilty of the unsightly conditions violation appealed to the county court, and ordered Seals to pay the Pearl Municipal Court a $1,000.00 fine and serve a six-month sentence in the Rankin County jail, with both the fine and the sentence suspended, conditioned upon Seals meeting certain requirements set forth in the county court's order, or, in lieu of a suspended fine and sentence, Seals could "clean up the property and become fully compliant with the City of Pearl Ordinances."

¶25. Seals appealed to the Rankin County Circuit Court, which affirmed the county court's judgment and remanded for execution of the sentence.

¶26. Seals appeals.

## STANDARD OF REVIEW

¶27. "The appellate courts affirm a trial judge's decision in a bench trial where substantial, credible, and reasonable evidence supports the decision." *Caissie*, 254 So. 3d at 852 (¶5) (recognizing that a direct appeal from a municipal court to the circuit or county court shall be "for a trial de novo");[10] *see* MRCrP 29.1. "We only reverse the findings of a trial judge sitting without a jury when the trial judge was clearly wrong or committed manifest error." *Id.* "Questions of law are reviewed de novo." *Rebuild Am. Inc. v. Colomb*, 344 So. 3d 864, 870 (¶15) (Miss. Ct. App. 2022).

## DISCUSSION

---

[10] In *Caissie*, we recognized that typically, "[e]ven if defects exist in the . . . municipal court's judgment," including due process assertions, "such defects amount to harmless error when a defendant appeals and receives a trial de novo." *Caissie*, 254 So. 3d at 852 (¶7). In the case before us, however, Seals presented his due process arguments concerning notice and an opportunity to cure before the county court and, thus, preserved this issue for appeal.

9

## I.     Alleged Violation of Seals's Statutory and Constitutional and Due Process Rights

¶28.   On July 14, 2022, Officer Ellis issued a citation to Seals for violating City nuisance ordinances prohibiting "unsightly conditions" found to be existing on Seals's property.  As he did before the county court, Seals asserts on appeal that in doing so, the City violated his due process rights because the City did not provide him with adequate notice of the alleged "unsightly conditions" existing on his property or enough time to remedy any such conditions prior to issuing the citation and "taking action" against him.[11]  According to Seals, this deprived him of his statutory and constitutional due process rights "to be heard at a meaningful time and [manner]."[12]  We are unpersuaded by Seals's assertions.  Rather, we find that based upon our review of the record as a whole, there is substantial evidence that Seals's due process rights were not violated in this case.

¶29.   "The fundamental requirement of due process is simply the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Miss. Bd. of Veterinary Med. v. Geotes*,

---

[11] Seals asserts that he was "arrested" for the unsightly conditions violation on July 14, 2022.  As set forth above, there is conflicting testimony and evidence in the record of whether Seals was arrested for the unsightly conditions violation or for failing to cooperate with Officer Ellis when Officer Ellis was trying to complete and issue the citation.  We decline to address this issue, however, because when Officer Ellis issued the citation, the City (through Officer Ellis) had already determined that Seals was in violation of the City nuisance ordinances.  Thus, we find that our due process analysis begins at that point.

[12] Seals relies on *Lee v. City of Pascagoula*, 412 So. 3d 584 (Miss. Ct. App. 2024), in support of his due process assertions.  On February 20, 2025—during briefing in the case before us—our opinion in *Lee* was vacated, and the appeal in that matter was dismissed by the Mississippi Supreme Court.  *Lee v. City of Pascagoula*, 402 So. 3d 752, 754 (¶4) (Miss. 2025) (vacating and dismissing Lee's appeal).  Seals did not bring this development to our attention.  Nonetheless, we consider Seals's due process assertions because cases cited within our *Lee* opinion and quoted by Seals remain valid law.

10

770 So. 2d 940, 943 (¶13) (Miss. 2000) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)).  In light of Seals's assertions in particular, we point out that although due process "requires that a defendant be given adequate notice," *Carl Ronnie Daricek Living Tr. v. Hancock Cnty. ex rel. Bd. of Sup'rs*, 34 So. 3d 587, 595 (¶16) (Miss. 2010), our supreme court has recognized that even if a defendant's "previous notice was not adequate," it was cured when the defendant "was given an opportunity to respond to the charges against him." *Geotes*, 770 So. 2d at 944-45 (¶21); *see also State v. Blenden*, 748 So. 2d 77, 90 (¶42) (Miss. 1999); *Vazzana v. City of Greenville*, 116 So. 3d 1103, 1106 (¶11) (Miss. Ct. App. 2013). As we discuss in more detail below, Seals had ample opportunity to respond to the "unsightly conditions" charge in this case.  Thus, we find no statutory or due process violation here.

¶30.    Two notice provisions set forth in Chapter 24 of the City's Code are relevant here. Section 24-2(a) warns residents that "[i]t is the duty of all persons in both the business and residential districts to keep and maintain their premises in a clean and sanitary condition at all times."  Pearl Code, Ch. 24, § 24-2(a).  In this regard, section 24-2(a) further provides, as follows:

> Any person failing to comply with this section *after being notified by the community development director or any member of the police department to remedy the condition* shall be guilty of a misdemeanor and, upon conviction, shall be punished by a fine not to exceed $1,000.00, or six months in jail, or both, for each 24 hours or fraction thereof of maintenance or continuation of the condition after being so notified.

*Id.* (emphasis added).  The "notice" referenced in this section does not require written notice.

¶31.    Section 24-74 provides further enforcement guidance, as follows:

> Whenever any condition described in this chapter is found to exist on any

11

premises within the city, *the owner of the premises shall be notified by the city, in writing, to correct, remedy or remove the conditions within ten days after the notice* and it is unlawful for any person to fail to comply with the notice.[13]

Pearl Code, Ch. 24, § 24-74 (emphasis added).

¶32. In this case, we find that there is substantial evidence that prior to July 14, the City notified Seals that conditions on his 355 South Sweet Home Church Road property violated City nuisance ordinances and that he must remedy the situation. *See* Pearl Code, Ch. 24, § 24-2(a). Officer Ellis testified that for at least six months before July 14, he had met with Seals on his property several times, and they had "numerous conversations" about the conditions on Seals's property and what he needed to do to get his property into compliance with the City's ordinances. Additionally, Officer Ellis, accompanied by Seals, placed red stickers on some inoperable vehicles on Seals's property that notified Seals that if the vehicles were not removed within fifteen days, the City would tow them.[14] Seals acknowledged during his testimony that Officer Ellis had been to his home more than once before July 14 to talk to him about the conditions on his property and that Officer Ellis placed red stickers on some vehicles that needed to be removed or cleaned up.

¶33. To be sure, we find no other evidence in the record that the City provided Seals with "written notice" concerning the conditions on his property before July 14, 2022. As such,

---

[13] Section 24-74 further requires that "[t]he notice shall be served personally on the owner to whom it is directed or shall be given by letter addressed to the owner at his last known post office address." Pearl Code, Ch. 24, § 24-74. If "personal service cannot be made," then notice may be accomplished by publication as detailed in section 24-74. *Id.*

[14] Section 24-11 addresses the procedure for tagging "derelict" vehicles, machinery, or equipment on an owner's property, requiring the owner to remedy the situation "within 15 days from posting the notice of the infraction." Pearl Code, Ch. 24, § 24-11.

we find that the City did not strictly comply with section 24-74 prior to Officer Ellis issuing the July 14, 2022 citation.[15]  Nevertheless, based upon our review of the record as a whole, we find that there is substantial evidence that Seals was given adequate notice and an opportunity to cure such that Seals's statutory and constitutional due process rights were not violated in this case.

¶34.    In particular, Officer Ellis returned to Seals's property later that afternoon on July 14 and gave Mrs. Seals a door hanger for the 355 South Sweet Home Church Road property. The door hanger detailed the unsightly conditions on the property, including "[h]ousehold furniture," an "[i]noperable motor vehicle[]" ("dump truck"), "[t]railers used for hauling," "27 tires," as well as "2 motors, batteries, car doors, [and a] filing cabinet," all strewn about the yard.

¶35.    Regarding an opportunity to cure, the following language appeared at the bottom of the door hanger: "All properties in the City of Pearl must be maintained in a clean and orderly manner at all times.  Please bring your property into compliance within 14 days of receiving this door hanger.  If you have any questions regarding this door hanger you may contact Community Development: (601) 932-3526."  Although this opportunity to cure came

---

[15] Although the City asserts that the June 1, 2022 door hanger constituted written notice to Seals regarding the conditions on the 355 South Sweet Home Church Road property, we are not convinced by the City's argument.  The June 1, 2022 door hanger was issued to Seals for unsightly conditions on property identified by the address "112 Holmes Avenue," which is the lot adjacent to the 355 South Sweet Home Church Road property. Officer Ellis testified that he had no personal knowledge about this door hanger—he was not the officer who left it with Seals's children, nor could he identify the officer who did so. Further, the June 1, 2022 door hanger was not admitted into evidence, nor is there any testimony in the record describing what unsightly conditions were identified by that door hanger.

13

after issuance of the citation, both Seals and his wife testified that they used this opportunity to try and bring their property into compliance.

¶36.    Seals testified that after receiving the July 14, 2022 door hanger, he tried to get in compliance by taking care of all the items listed on it.  According to Seals, when Officer Ellis visited his home again on July 28, Officer Ellis "actually told me my yard was in compliance. . . . [H]e said everything looked good."  Similarly, Morgan testified that in response to the July 14, 2022 door hanger, "[Seals] moved stuff, he took stuff off, he cleaned up the—he tried to get in compliance.  We got a fence built, and . . . we spent the money to try to get in compliance. So it wasn't like we didn't do anything."

¶37.    Thus, even though the City's notice was not strictly compliant with the written-notice requirement pursuant to section 24-74, we find that Seals was provided sufficient notice of the "unsightly conditions" existing on his property and time to cure those conditions prior to his appearance before the municipal court and certainly before his de novo trial on appeal to the county court that took place on July 26, 2023, over a year from the time Seals received the July 14, 2022 citation and door hanger.  Indeed, Seals, represented by counsel, appeared at the county court trial de novo and, through counsel, actively participated in the trial by presenting testimony and evidence on his behalf, cross-examining the City's sole witness, Officer Ellis, and arguing his position with respect to the unsightly conditions violation.  On these facts, we are unpersuaded by Seals's due-process-violation assertions.  *Geotes* and *Blenden* support our decision.

¶38.    In *Geotes*, the Board of Veterinary Medicine revoked Geotes's veterinarian's license.

14

*Geotes*, 770 So. 2d at 942 (¶9). Geotes appealed the Board's revocation order to the chancery court. *Id.* The chancellor vacated the Board's order, finding, among other points, that Geotes had not been provided adequate notice of the charges against him, thus depriving him of his due process rights. *Id.*

¶39. On appeal, the supreme court reversed the chancellor's decision, observing that the defendant "was represented by counsel at both hearings [before the Board] and was given an opportunity to respond to the charges against him. Even if the previous notice was not adequate, it was cured by the Board leaving the record open and giv[ing] Geotes thirty days to respond." *Id.* at 944-45 (¶21).

¶40. Similarly, in *Blenden*, the supreme court found no due process violation despite Harrison County not being notified of two hearings that ultimately resulted in it being held jointly and severally liable with the State for monetary sanctions. *Blenden*, 748 So. 2d at 90 (¶42). The supreme court pointed out that the County was notified of the third hearing, appeared at that hearing represented by counsel, and its counsel "was given an opportunity to argue the County's position at the hearing." *Id.* Under these circumstances, the supreme court found, "Due process is satisfied where there is notice and an opportunity to be heard." *Id.*; *see also Vazzana*, 116 So. 3d at 1106 (¶11) (rejecting the defendant's insufficient notice assertion where the defendant "was present at the hearing, . . . he acknowledged that he had been personally served with the notice of the hearing," and "[i]n fact, [he] actively participated in the hearing").

¶41. Likewise, in this case, Seals received ample notice of the municipal court date,

15

properly appealed that unfavorable ruling, and appeared at the county court trial de novo represented by counsel. Seals, through counsel, actively participated in that trial and presented his arguments to the court. Further, even though the county court found in the City's favor, the county court judge explicitly allowed Seals over two months to cure the unsightly conditions in lieu of the suspended fine and sentence that had been imposed. In his July 26, 2023 bench ruling, the county court judge ruled:

> [I]n lieu of the suspended fine and the suspended jail time, I am ordering that the defendant clean up his property—and it's 355 South Sweet Home Church Road . . . . He will clean up that property, become fully compliant with the City of Pearl Ordinances.

> And as part of that, he will serve an unsupervised probation until October the 6th of this year, at which time the City of Pearl will conduct a compliance inspection on the defendant's property . . . . If the defendant successfully passes this inspection, then the unsupervised probation will expire, and the case will be concluded.

Although Seals did not avail himself of this opportunity and instead chose the appellate route, we find no violation of statutory or constitutional due process rights under these circumstances.

¶42.   We also note that even if there had been a "statutory" due process violation as Seals alleged (failure to strictly comply with section 24-74), "the appropriate remedy would be to remand to the [county] court for further factual determinations." *Leavitt v. Carter*, 178 So. 3d 334, 343 (¶30) (Miss. Ct. App. 2012). In *Leavitt*, however, this Court reasoned that remanding the case to the circuit court "for further review would serve no purpose and would be judicially inefficient" where the defendant had essentially admitted to facts during the hearing establishing the charge against him. *Id.*; *see also State v. Stafford*, 237 So. 3d 1280,

16

1285 (¶21) (Miss. Ct. App. 2018).

¶43. Here, Seals, represented by counsel, fully presented his evidence and arguments to the county court, specifically asserting that he *had* complied with the City nuisance ordinances and was told by Officer Ellis on July 28, 2022, that he *was* in compliance. Like the circumstances in *Leavitt*, remanding this case for "further factual determinations" before the county court "would serve no purpose and would be judicially inefficient." *Leavitt*, 178 So. 3d at 343 (¶30). As such, we are not convinced by Seals's due process assertion for this additional reason.

¶44. For all the reasons discussed above, we find no violation of Seals's statutory or constitutional due process occurred in this case.

## II. Sufficiency of the Evidence

¶45. Seals argues that the evidence was insufficient to support his conviction for unsightly conditions. We disagree. Officer Ellis testified that there were "multiple violations" on Seals's property on July 14, 2022. The county court judge heard Officer Ellis testify in detail about the photographs that he took that day depicting the numerous unsightly conditions present on Seals's property and observable from the road, including "tires, motors, batteries, car parts, inoperable vehicles, vehicles with tags out-of-date tags, and other debris throughout the property." These photographs were admitted into evidence. Officer Ellis was also asked to read aloud the applicable sections of the City's Code, and he testified that he observed violations of each of those ordinances on Seals's property.

¶46. During the presentation of his case, Seals addressed the alleged unsightly conditions,

testifying that he had cleaned up the property after receiving the July 14, 2022 door hanger and that when Officer Ellis visited his property on July 28, he told Seals that his property was in compliance with the city ordinances and that "everything looked good." His wife, Morgan, likewise testified that she and Seals tried to comply and spent money building a fence around at least some portion of the property. Seals presented no photographs or any other evidence, however, depicting his property either before or after his attempt at becoming compliant with the City nuisance ordinances.

¶47. The county court judge allowed the City to recall Officer Ellis as a witness to rebut this testimony. In rebuttal, Officer Ellis testified at length about the conditions he observed on Seals's property, which were viewable from the road, on his return July 28, 2022 visit. He described the photographs he took on July 28, 2022 depicting numerous violations of City nuisance ordinances that existed on that date, including items in the yard such as motors, a four-wheeler missing the left rear tire and that appeared to be inoperable, tires, and items that were depicted in the July 14, 2022 set of photographs, including the same silver inoperable vehicle in the same position in the woods, the same truck with car tag RA16717 that expired in March of 2022, the same trailer still in the front yard, and the dump truck still in the same location with an expired tag. During his cross-examination, Officer Ellis acknowledged that Seals had begun building a fence and that he had removed or placed some things behind that fence. Officer Ellis further testified, however, that Seals was still not in complete compliance with the applicable City nuisance ordinances on July 28, 2022.

¶48. On these facts, we find that substantial evidence supports the county court's

determination that Seals violated sections 24-3(c)(1), (7), (8), (9), (10), (11), and (13) of Chapter 24 of the City's Code "beyond a reasonable doubt," and we find no error in the circuit court affirming that decision. *Cf. Vazzana*, 116 So. 3d at 1107 (¶15) (The city council's determination that Vazzana's properties were a "menace to the community"[16] was not arbitrary or capricious where the record showed there were "piles of wood stacked high in the yard, vines growing all over structures, and a huge tree lying in the yard," there were several broken windows and "broken window panes lying in the yard," "several old cars and a bread truck parked in the yard" that did not appear operable, and "there were several tires and other pieces of equipment . . . scattered throughout the yard."). Accordingly, we find that Seals's argument about the sufficiency of the evidence on appeal is without merit.

¶49. **AFFIRMED.**

**BARNES, C.J., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR. WILSON, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. EMFINGER, J., NOT PARTICIPATING.**

---

[16] *See* Miss. Code Ann. § 21-19-11 (Rev. 2015).